190 N.J. Super. 326 (1983)
463 A.2d 391
JACK W. FIELD, PLAINTIFF-RESPONDENT,
v.
MAYOR AND COUNCIL OF THE TOWNSHIP OF FRANKLIN; PLANNING BOARD OF THE TOWNSHIP OF FRANKLIN, DEFENDANTS-RESPONDENTS, AND FRANKLIN CITIZENS FOR ORDERLY PLANNING, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 14, 1983.
Decided June 30, 1983.
*327 Before Judges BOTTER, POLOW and BRODY.
Mark L. First argued the cause for appellant (Jamieson, McCardell, Moore, Peskin & Spicer, attorneys; Mark L. First of counsel and on the brief).
Dennis A. Auciello argued the cause on behalf of respondent Planning Board. (Dennis A. Auciello on the brief).
David J. Frizell argued the cause on behalf of respondent Field (Frizell & Pozycki, attorneys; David J. Frizell of counsel and on the brief).
The opinion of the court was delivered by POLOW, J.A.D.
*328 In November 1978 plaintiff Jack W. Field applied to the Franklin Township Planning Board for preliminary approval of a Planned Unit Development (PUD) on a 396.5 acre tract. The entire development would encompass 1332 townhouses and 1332 garden apartment units, the maximum number of each of the two types of residential units permitted for this tract under the Franklin Township ordinance. The plan also provided for the minimum commercial requirement of 15% or 19.85 acres and the minimum open space and public area requirement of 25.1% or 99.36 acres. On or about December 28, 1978 the Field PUD application was declared complete.
Public hearings for tentative approval of the PUD application were held by the Planning Board on March 14, 29, April 11, 25 and 30, and May 7, 23 and 29, 1979. Appellant Franklin Citizens for Orderly Planning (FCOP) was represented by counsel and was permitted full participation in the proceedings by way of cross-examination of Field's witnesses, presentation of expert witnesses and submission of briefs on various issues. On or about June 13, 1979 the Planning Board adopted a resolution granting preliminary approval for the Field PUD application subject to 21 terms and conditions.
Pursuant to N.J.S.A. 40:55D-17(a) and the applicable Franklin Township zoning ordinance, FCOP appealed to the Franklin Township Council. When the Township Council denied his motion to dismiss for lack of jurisdiction and reserved decision on the issue of FCOP's standing, Field filed an action in lieu of prerogative writs attacking the Council's denial of his motion to dismiss and FCOP's standing to appeal from the action of the Planning Board. He also demanded monetary damages from FCOP and two of its members for losses allegedly resulting from delay. The complaint was dismissed for failure to exhaust administrative remedies.
Thereafter, FCOP's appeal to the Township Council was completed. On January 14, 1980 the Council adopted a resolution *329 reversing and remanding in part and affirming in part the Planning Board determination. The Council's resolution set forth six stages of construction and the time frame during which each stage was to be constructed. However, it concluded that there was insufficient support in the record for the Planning Board's conclusion that "the physical design of the various proposed sanitary facilities is adequate or feasible." Thus, the matter was remanded to the planning board "to develop testimony and make findings of fact and conclusions thereon as to the adequacy and feasibility of the physical design for providing sanitary sewers for the PUD." It required, further, specific findings and conclusions with regard to each of the three proposed sewage treatment options and the impact of each option. All of FCOP's additional contentions in attacking the PUD preliminary approval were rejected.
Thereupon, plaintiff amended his original complaint in the Law Division to appeal from the Council's decision. In a letter opinion of June 29, 1982, the trial judge found as a matter of law that the action of the Township Council in remanding the matter for further findings and conclusions on the sewer feasibility issue violated the Municipal Land Use Law and was therefore void. Thus, the adverse action of the Township Council was reversed and the matter was remanded "with instructions to grant plaintiff's application for preliminary approval." On this appeal FCOP seeks reinstatement of the Township Council's remand to the planning board for additional evidence and findings on the sewage feasibility issue and seeks a remand to the Township Council of all other issues for a de novo review of the record.
FCOP contends that the Planning Board erroneously granted preliminary approval in that certain required findings were deferred "until the final approval and construction stages" including findings with regard to sewer, water, staged development, environmental impact, and low and moderate income housing.
*330 The trial judge, in reversing the Township Council's remand of the sewer feasibility issue, effectively reinstated and upheld the Planning Board's resolution granting preliminary approval. On appeal, we must determine whether the findings and conclusions of the Township Council, as the relevant governing body, are supported by the record. Evesham Tp. Bd. of Adj. v. Evesham Tp. Council, 86 N.J. 295, 300 (1981). Thus, the issues before us are whether the Township Council properly held that the record is inadequate with regard to sewer feasibility and whether the Planning Board approval on all other issues, as affirmed by the Township Council, violates the Municipal Land Use Law ("the act"), N.J.S.A. 40:55D-1 et seq., because that approval is subject to fulfillment of certain terms and conditions at some unspecified future time.
The act defines preliminary approval as "the conferral of certain rights pursuant to sections 34, 36 and 37 of this Act prior to final approval after specific elements of a development plan have been agreed upon by the planning board and the applicant." N.J.S.A. 40:55D-6 (footnote omitted; emphasis supplied). See N.J.S.A. 40:55D-46, 40:55D-48, 40:55D-49. The granting of preliminary approval for a PUD signifies that agreement has been reached on basic elements of the PUD, including its physical design, the method of provision of public services and its impact on the physical environment. See N.J.S.A. 40:55D-45. Moreover, the granting of such approval signifies that before approval was given the Planning Board made specific findings of fact with respect to the PUD as required by N.J.S.A. 40:55D-45 of the act.
When preliminary approval of any major subdivision, see N.J.S.A. 40:55D-5, is granted the applicant may rely on certain statutory rights for a three-year period from the date of approval. N.J.S.A. 40:55D-49. The general terms and conditions on which preliminary approval was granted may not be changed, except for those which "relate to public health and safety". The applicant may submit "the whole or a section or sections of the preliminary subdivision plot or site plan" before the expiration *331 date of preliminary approval. The applicant may be granted extensions "of at least 1 year but not to exceed a total extension of 2 years." N.J.S.A. 40:55D-49(a)-(c). In addition, where, as here, the subdivision of an area of 50 acres or more is involved, the Planning Board may grant preliminary approval rights for a period longer than three years, "taking into consideration (1) the number of dwelling units and nonresidential floor area permissable under preliminary approval, (2) economic conditions, and (3) the comprehensiveness of the development." N.J.S.A. 40:55D-49(d).
Under the Municipal Plan Act (1953), N.J.S.A. 40:55-1.1 et seq., the predecessor of the Municipal Land Use Law, tentative approval of a plan could be granted "subject to specified conditions not included in the plan as submitted." N.J.S.A. 40:55-61, repealed L. 1975, c. 291, § 80 (effective Aug. 1, 1976).
In contrast, N.J.S.A. 40:55D-48 of the current act, which sets forth the procedure for preliminary approval of major subdivisions, including PUD's, does not refer to preliminary approval subject to conditions. Subsection (c) of the provisions states:
c. Upon the submission to the administrative officer of a complete application for a subdivision of 10 or fewer lots, the planning board shall grant or deny preliminary approval within 45 days of the date of such submission or within such further time as may be consented to by the developer. Upon the submission of a complete application for a subdivision of more than 10 lots, the planning board shall grant or deny preliminary approval within 95 days of the date of such submission or within such further time as may be consented to by the developer. Otherwise, the planning board shall be deemed to have granted preliminary approval to the subdivision. [Emphasis added.]
Thus, the act contemplates a "complete" application for preliminary approval. However, it also provides for conditional approval in the following section:
b. In the event that development proposed by an application for development requires an approval by a governmental agency other than the municipal agency, the municipal agency shall, in appropriate instances, condition its approval upon the subsequent approval of such governmental agency; provided that the municipality shall make a decision on any application for development within the time period provided in this act or within an extension of such period as has been agreed to by the applicant unless the municipal agency is prevented or relieved from so acting by the operation of law. [N.J.S.A. 40:55D-22.]
*332 Furthermore, the provision for final approval contemplates completion or fulfillment of conditions of preliminary approval in the following section:
`Final approval' means the official action of the planning board taken on a preliminary approved major subdivision or site plan after all conditions, engineering plans and other requirements have been completed or fulfilled and the required improvements have been installed or guarantees properly posted for their completion, or approval conditioned upon the posting of such guarantees. [N.J.S.A. 40:55D-4 (emphasis supplied).]
And, N.J.S.A. 40:55D-50(a) requires the Planning Board to grant final approval "if the detailed drawings, specifications and estimates of the application for final approval conform to the standards established by ordinance for final approval, the conditions of preliminary approval and, in the case of a major subdivision, the standards prescribed by the "Map Filing Law ...'" [Emphasis supplied.]
We are satisfied that a distinction may be drawn between preliminary approval granted subject to subsequent approval by appropriate public agencies and preliminary approval granted subject to later submission of additional information fundamental to an essential element of the development plan.
This construction is supported by the intent and purpose of the act as set out in N.J.S.A. 40:55D-2:
... Basically, it is intended to encourage municipal action to guide the appropriate use or development of all lands in this State in a manner which will promote the public health, safety, morals and general welfare and to encourage coordination of the various public and private procedures and activities shaping land development with a view of lessening the cost of such development and to the more efficient use of land. [Levin v. Parsippany-Troy Hills Tp., 82 N.J. 174, 179 (1980).]
It is evident that a municipality cannot guide the use and development of lands in this state if fundamental elements of a development plan are left unresolved before preliminary approval, leaving them instead for an unspecified later day. See Manalapan Holding Co. v. Hamilton Tp. Planning Bd., 184 N.J. Super. 99, 107 (App.Div. 1982), rev'd on other grounds 92 N.J. 466 (1983). Certain elements  for example, drainage, sewage disposal and water supply  may have such a pervasive impact *333 on the public health and welfare in the community that they must be resolved at least as to feasibility of specific proposals or solutions before preliminary approval is granted. See Hilton Acres v. Klein, 35 N.J. 570, 586 (1961); Hamlin v. Matarazzo, 120 N.J. Super. 164, 174 (Law Div. 1972). If the applicant fails to provide sufficient information on the fundamental elements of his plan, preliminary approval should be denied. See N.J.S.A. 40:55D-45. If a developer is merely seeking "an informal review of a concept plan for a development for which the developer intends to ... submit an application," he should use the procedures set forth in N.J.S.A. 40:55D-10.1.
With reference to the sewage disposal issue, the Township Council made the following finding:
(2) Applicant proposed three possible options to provide sanitary sewerage to the PUD (a) connection to the Middlesex County Sewerage Authority through South Brunswick Township  there is no agreement with the Township of South Brunswick nor have negotiations been commenced; (b) package treatment plant  there is insufficient evidence to either establish or disestablish the feasibility of this option; (c) spray irrigation system  applicant does not have a conceptual approval from the State of New Jersey for spray irrigation, moreover there is insufficient evidence to either establish or disestablish the feasibility of this option.
Franklin Township Ordinance § 1213.2(e) requires a PUD applicant to provide reasonably necessary information regarding disposition of sanitary waste. We are satisfied that the Township Council correctly found that Field failed to provide sufficient information with regard to the feasibility of his three sewage disposal options. The Council's determination is equivalent to a finding that the Planning Board had insufficient information to allow it to consider and resolve a fundamental element of the development plan, notwithstanding the necessity of subsequent governmental approval. See Manalapan Holding Co. v. Hamilton Tp. Planning Bd., supra, 184 N.J. Super. at 107.
The Council's objections are well taken in view of the sparse testimony on the sewer issue and the absence of in-depth analysis with respect to the feasibility and relative desirability of each of the sewer options in this proposed PUD. It would be appropriate *334 for the Planning Board, on receipt and analysis of specific proof with regard to each option, to determine which option would be most desirable for the community in general and to mandate the priority of such option, subject only to availability and further approval by the appropriate public agencies.
With regard to FCOP's argument relating to low- and middle-income housing, Franklin Township Ordinance § 1212.1 mandates that "[e]very planned development of PUD shall provide dwelling units for families of low and moderate income." Plaintiff made a representation to the Planning Board that 133 dwelling units (5%) would be constructed for low-income housing and 267 units (10%) for moderate-income housing. However, plaintiff further indicated that it was premature at that time to determine whether he could accomplish this objective from private financial sources without government subsidies. He indicated that the determination would be made before final approval. We conclude that the Planning Board properly could have found that the applicant clearly demonstrated his intention to provide for the minimum number of low- and moderate-income units required by the ordinance.
We note that Condition 7 of the Planning Board's resolution requires the applicant to "attempt to" provide his proposal for the 400 units of "least cost housing" before Phase I and that those 400 units are to be "scattered throughout the PUD tract." We assume the reference to "least cost housing" was intended to refer to the 133 low-income units and 267 moderate-income units and the condition must be so interpreted. However, on remand, the Planning Board must require the inclusion of a reasonable percentage of such units in Phase I. Provision of a reasonable or proportionate number of low- and moderate-income units may not be postponed for another phase. So. Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158, 270 (1983). Failure to schedule a portion of the low- and moderate-income units for Phase I would therefore be an abuse of the discretion reposed in the Planning Board by the municipal ordinance.
*335 We have reviewed appellant's contentions with regard to the water supply issue, the staged development issue and the environmental impact issue and find that there is sufficient credible evidence in the record to support the Township Council's ruling in each case. Thus, we affirm the trial judge's determination upholding those rulings. Evesham Tp. Bd. of Adj. v. Evesham Tp., supra, 86 N.J. at 300.
Appellant correctly argues that the review by a governing body of the action of a planning board under N.J.S.A. 40:55D-17(a) is not that applicable on appeal but is "a de novo review of the record" requiring independent findings of fact and conclusions thereon. Evesham Tp. Bd. of Adj. v. Evesham Tp., supra, 86 N.J. at 300-301, 301 n. 2. However, the trial judge found that the governing body's review in this case was sustainable as a de novo review. We agree. We see no need to remand the case to the Township Council for a further de novo review.
The judgment of the trial court is modified to reinstate the ruling of the Township Council remanding the sewage disposal issue to the Planning Board for further proof and additional findings and conclusions consistent with this opinion. In all other respects the judgment appealed from is affirmed.