240 N.J. Super. 224 (1989)
573 A.2d 162
IN THE MATTER OF APPEAL OF ADOPTION OF N.J.A.C. 7:7A-1.4 (DEFINITION OF "DOCUMENTED HABITATS FOR THREATENED AND ENDANGERED SPECIES" AND "SWALE"), 7:7A-2.5(B)(2), AND 7:7A-2.7(F).
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1989.
Decided September 7, 1989.
*225 Before Judges KING, ASHBEY and SKILLMAN.
James P. Wyse argued the cause for appellant (Schenck, Price, Smith & King, attorneys; James P. Wyse, of counsel; Anne E. Aronovitch and James P. Wyse, on the brief).
Carol A. Blasi, Deputy Attorney General, argued the cause for respondent (Peter N. Perretti, Jr. Attorney General, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Carol A. Blasi, on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
Appellants, New Jersey Conservation Foundation and New Jersey Audubon Society, appeal from the adoption of certain regulations implementing the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq. (the Act) by the Department of *226 Environmental Protection (DEP). With one exception, we affirm.
In July 1987 the Legislature enacted the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq. N.J.S.A. 13:9B-25a directed DEP to adopt rules and regulations pursuant to the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq. DEP proposed 14 chapters of regulations. Following public hearings and written comments, DEP made changes and published the final regulations. Appellants challenge two of these regulations, asserting that they were procedurally defective and substantively contrary to the Act.[1] Appellants also claim on appeal that they are entitled to recover reasonable attorneys fees (not exceeding $10,000) pursuant to the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq.

I
In order to evaluate these claims, it is necessary to examine the general format of the Act, its definitions, the permits required and the exemptions permitted. Under the Act "freshwater wetlands" (N.J.S.A. 13:9B-3) were divided into three categories. Those of "exceptional resource value" were
... freshwater wetlands which exhibit any of the following characteristics:
(1) Those which discharge into FW-1 waters and FW-2 trout production (TP) waters and their tributaries; or[2]
(2) those which are present habitats for threatened or endangered species, ....
[N.J.S.A. 13:9B-7a]
Freshwater wetlands of "ordinary value" were defined as those not of "exceptional resource value" and which were "certain isolated wetlands, man-made drainage ditches, swales, or detention facilities." N.J.S.A. 13:9B-7b. Freshwater wetlands of *227 "intermediate resource value" were "all other freshwater wetlands." N.J.S.A. 13:9B-7c.
Under the statute (and the regulations), in addition to permits of varying strictness being required to develop "wetlands," a DEP waiver was required for the development for "transition areas," defined as "land adjacent to a freshwater wetland which minimizes adverse impacts on the wetland or serves as an integral component of the wetlands ecosystem." N.J.S.A. 13:9B-3. Under N.J.S.A. 13:9B-16(b), only wetlands of ordinary resource value required no transition areas.
The relevant primary effective date of the Act was July 1, 1988, but there were certain "grandfather" permit exemptions, primarily for projects previously in the municipal approval process.[3]N.J.S.A. 13:9B-4d.
Appellants' challenge to the regulations is narrow. They do not dispute that the regulations carefully tracked most statutory definitions. Appellants contend, however, that two regulations as adopted differed so from the versions proposed that DEP was required to hold new hearings with an opportunity for new public comment. N.J.S.A. 52:14B-4.9; N.J.A.C. 1:30-4.3.
N.J.S.A. 52:14B-4.9 provides that
Any rule proposed by a State agency which revises, rescinds or replaces either (1) any proposed ... rule ... shall be considered as a new rule....
N.J.A.C. 1:30-4.3 provides:
(a) Where, following the notice of a proposed rule, an agency determines to make changes in the proposed rule which are so substantial that the changes effectively destroy the value of the original notice, the agency shall give a new notice of proposed rule and public opportunity to be heard.
(b) In determining whether the changes in the proposed rule are so substantial, consideration shall be given to the extent that the changes:
1. Enlarge or curtail who and what will be affected by the proposed rule;
2. Change what is being prescribed, proscribed or otherwise mandated by the rule;

*228 3. Enlarge or curtail the scope of the proposed rule and its burden on those affected by it.
Appellants urge that the changes in question were "substantial," relying upon Insurance Brokers Assn. of N.J. v. Sheeran, 162 N.J. Super. 34, 40, 392 A.2d 203 (App.Div. 1978), certif. den. 78 N.J. 408, 396 A.2d 594 (1978). DEP argues to the contrary. In Insurance Brokers, we quoted with approval that "`[t]he requirement of submission of a proposed rule for comment does not automatically generate a new opportunity for comment merely because the rule promulgated by the agency differs from the rule it proposed, partly at least in response to submissions.... If [the opposite] were the rule the proceedings might never be terminated.'" Ibid., quoting from International Harvester Co. v. Ruckelshaus, 478 F.2d 615, 632 (D.C. Cir.1973).
We have carefully reviewed the changes to which appellants refer and reject their challenge to the regulatory "swale" definition (N.J.A.C. 7:7A-1.4) as unfounded. See N.J.S.A. 13:9B-23b; N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561, 384 A.2d 795 (1978).

II
We find appellants' challenge to DEP's regulation eliminating transition areas for projects which had received preliminary municipal approval before July 1, 1989, however, merited, not only because the promulgated regulation was a substantial change from the proposed regulation, but because it was unwarranted by the statute.
As originally proposed, N.J.A.C. 7:7A-2.7(c) provided:
Projects not subject to the jurisdiction of the United States Army Corps of Engineers and for which preliminary site or subdivision applications have been approved prior to July 1, 1988 shall not require transition areas. [Emphasis added]
After the comment period, however, this regulation was renumbered N.J.A.C. 7:7A-2.7(f) and the date was changed to "July 1, 1989." This change was based on comments which relied on *229 the last section of the Act, L. 1987, c. 156, § 34, providing that the N.J.S.A. 13:9B-16, -17 and -18 provisions respecting transition areas were not to be implemented until July 1, 1989.
In support of its regulation as promulgated, DEP contends there were two effective dates: July 1, 1988 for wetland regulation and July 1, 1989 for transition area requirements (N.J.S.A. 13:9B-6 through 18). In this interpretation DEP relies on a statement attached to the Senate Committee substitute bill (which became the Act), saying "[t]his bill ... would take effect one year after enactment.... The sections of the bill imposing the transition area requirements would not take effect until two years after enactment."
The law as enacted says,
This act shall take effect one year after enactment, except that section 25, section 26, section 27, section 30 and section 33 shall take effect immediately, and except that the department shall not implement the provisions of sections 16, 17 and 18 [the transition area requirements] until two years after enactment. The department shall take any administrative actions prior to the effective date of this act necessary to implement the provisions of this act on and after the effective date.[4] [L. 1987, c. 156, § 34; emphasis added]
Appellants argue plain meaning, emphasizing the difference between the words "take effect" and "implement." They assert that developers of projects with transition areas, while not subjected to DEP regulation before July 1, 1989, could not be exempt from such regulations unless they either applied for preliminary municipal approvals before June 8, 1987 or obtained such approvals before July 1, 1988 (N.J.S.A. 13:9B-4d). They argue that the legislative purpose of providing for an additional year to "implement" the statute was to give DEP time to finalize the regulations and to give developers time to finish projects which had been started, not to give developers an *230 additional year in which to obtain a preliminary approval and permanent exemption from regulation.
DEP responds that the "effective" and "implementation" dates must be synonymous, because if the Act created transition areas as of July 1, 1988, but DEP could not "implement" the statute until July 1, 1989, the transition areas created would be without regulation during the intervening year. In this interpretation DEP cites N.J.S.A. 13:9B-30, providing that on the effective date of the Act, would supersede local regulation.[5] Moreover, DEP urges that permit applicants in August of 1988 "would not know until sometime after July 1, 1989 whether they could build in the transition area."
While in our review of DEP's interpretation of legislative intent, we must be guided by DEP's expertise and the fact that the Legislature designated DEP to interpret the statute, we may not accept its regulation if it varies from the statute. See In re Jamesburg High School Closing, 83 N.J. 540, 549, 416 A.2d 896 (1980); N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm., 82 N.J. 57, 82-83, 411 A.2d 168 (1980). If there is a anomaly in the statute, DEP cannot rewrite the statute through its regulations. If the regulation is plainly at odds with the statute, it is ultra vires. See Last Chance Development v. Kean, 232 N.J. Super. 115, 128, 556 A.2d 796 (App.Div. 1989).
The law was precise in defining what projects were to be exempt from transition area requirements. These exemptions included
Projects for which (1) preliminary site plan or subdivision applications have received preliminary approvals from local authorities ... prior to the effective date [July 1, 1988] of this act, [or] (2) preliminary site plan or subdivision applications have been submitted prior to June 8, 1987.... [N.J.S.A. 13:9B-4d]
The third relevant exemption was that wetlands of ordinary resource value did not require transition areas. N.J.S.A. *231 13:9B-16a. Yet DEP's regulation provided that projects which had received preliminary municipal approval as late as July 1, 1989 required no transition areas. That interpretation extended the exemptions beyond the statutory language.
Moreover, this result is not only contrary to legislative intent as expressed, which directed DEP to regulate post-July-1989 construction, it is against the legislative history.[6] In the Governor's executive order, which was issued June 8, 1987, the Governor particularly spoke of the danger presented by the inappropriate development of these "buffer" areas from "increased runoff, sedimentation and introduction of pollutants" to the wetlands. Executive Order 175.[7] The statute described the transition area as a "sediment and stormwater control zone to reduce the impacts of development upon freshwater wetlands...." N.J.S.A. 13:9B-16a(2). While a plan to manage development runoff may be required by the municipality at the time of preliminary subdivision approval, that plan may be less than precise, so long as the "fundamental elements," are "resolved at least as to [the] feasibility of specific proposals or solutions before preliminary approval is granted." Field v. Franklin Tp., 190 N.J. Super. 326, 332-333, 463 A.2d 391 (App. Div. 1983), certif. den. 95 N.J. 183, 470 A.2d 409 (1983). Such a plan may be declared feasible by the municipality without adequate consideration for adjoining wetlands.
*232 The transition area regulations as proposed contain DEP'S informed reference to the impact of certain activities carried on in the land immediately bordering the wetlands, not only respecting "excavation", "dumping", "erection of structures", but also the "placement of pavements" and "destruction of plant life". 21 N.J.R. 598 (March 6, 1989), proposed N.J.A.C. 7:7A-6.2(a).[8] Particularly regulated is the construction of "stormwater management facilities" and "[l]inear development". Id. at 602, proposed N.J.A.C. 7:7A-7.4(a).[9] The proposed regulations also refer to a standard by which DEP would determine a project's required distance from a wetland (of exceptional resource value), using a matrix of "development intensity", which is defined as "the percentage of the surface area ... which will be covered by impervious surfaces at the completion of the proposed project", including "pavement, rooftops, sidewalks, driveways, tennis courts and swimming pools." Id. at 601, proposed N.J.A.C. 7:7A-7.2(e)3. If N.J.A.C. 7:7A-2.7(f) remains in effect, the developer with 1988 municipal approval could never be required to comply with or to receive a waiver from any of these environmentally sensitive specifications regardless of the state of their actual construction or the lack of inconvenience to the developer, and regardless of how close the activity was to the wetlands or how sensitive the wetland was. The project would be free from further regulation as well.[10]
*233 The legislation and its history are consistent. The intent was that there be no prohibition against construction in a future transition area based on a municipal approval until the "transition area requirements ... take effect." Senate Committee Statement. Upon the date of regulation implementation, July 1, 1989, the project would become subject to State regulation as well as municipal. The important statutory requirement was that the preliminary municipal approval would not "immunize the owner from valid subsequently adopted legislation, state or municipal." Tremarco Corporation v. Garzio, 32 N.J. 448, 457, 161 A.2d 241 (1960), quoting Roselle v. Moonachie, 49 N.J. Super. 35, 40, 139 A.2d 42 (App.Div. 1958).

III
Finally, because they are successful on appeal, appellants seek reasonable attorney's fees (up to $10,000) pursuant to N.J.S.A. 2A:35A-10 of the Environmental Rights Act, asserting their action was brought under that Act "to restrain the violation" of N.J.S.A. 13:9B-1 et seq. See N.J.S.A. 2A:35A-4a.
The purpose of the Environmental Rights Act is to assure that every state citizen has "ready access to the courts for the remedy of such abuses" as "pollution, impairment and destruction" of the State's environment. N.J.S.A. 2A:35A-2. To that end the Legislature directed that
Any person may maintain an action in a court of competent jurisdiction against any other person to enforce, or to restrain the violation of, any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment. [N.J.S.A. 2A:35A-4a]
See Girandola v. Allentown, 208 N.J. Super. 437, 441, 506 A.2d 64 (App.Div. 1986).
*234 At no time, however, did appellants seek to enforce a law or to restrain any violations. Their notice of appeal recites that appellants were appealing from "adoption of regulations codified at N.J.A.C. 7:7A-1 et seq. effective June 6, 1988."[11] In I.H.R.A.C. v. Diamond Shamrock Chem., 216 N.J. Super. 166, 174, 523 A.2d 250 (App.Div. 1987), we held that "... the primary, if not sole, thrust of the Act is the relationship of citizens to polluters." In line with this interpretation, we are satisfied that appellants' challenge to DEP's adoption of wetlands regulations was not an action against "polluters" under the Environmental Rights Act.[12] To rule otherwise would be to provide that all challengers to DEP regulations could be financed with public funds, an intent which we do not derive from the wording or history of the Environmental Rights Act. See ibid.
N.J.A.C. 7:7A-2.7(f) is set aside as ultra vires. The regulations under appeal are otherwise affirmed. Appellants' application for counsel fees is denied.
SKILLMAN, J.A.D., concurring in part and dissenting in part.
I agree with the majority's conclusion that the changes in the sections of the proposed regulations of the Department of Environmental Protection (DEP) implementing the Freshwater Wetlands Protection Act (the Act), N.J.S.A. 13:9B-1 et seq., which define "swale" and describe the effective date of "transition area" requirements were not "so substantial that the changes effectively destroy the value of the original notice." N.J.A.C. 1:30-4.3(a). Consequently, the DEP was not required *235 to give a new notice and opportunity for the public to be heard before adopting these regulations. I also agree with the majority that the definition of "swale" in N.J.A.C. 7:7A-1.4 is consistent with N.J.S.A. 13:9B-7b.[1] However, I disagree with the majority's conclusion that the Legislature intended DEP's transition area regulations to be applied retroactively to development projects which received site plan or subdivision approval prior to their adoption. Therefore, I dissent from the part of the majority's opinion which invalidates N.J.A.C. 7:7A-2.7(f).
The Freshwater Wetlands Protection Act is highly significant new environmental legislation which provides for strict regulation of activities in freshwater wetlands areas. Because my disagreement with the majority is limited to the part of its opinion which invalidates DEP's regulation relating to the operation of the transition area requirements, I have limited my discussion to the sections of the Act dealing with this subject.
A "transition area" is defined as "as area of land adjacent to a freshwater wetland which minimizes adverse impacts on the wetland or serves as an integral component of the wetlands ecosystem." N.J.S.A. 13:9B-3. All wetlands of "exceptional" or "intermediate" resource value must have adjacent transition areas. N.J.S.A. 13:9B-7. The purpose of a transition area is to provide "(1) ... temporary refuge for freshwater wetlands fauna during high water episodes, critical habitat for animals dependent upon ... freshwater wetlands, ... slight variations of freshwater wetlands boundaries over time due to hydrologic or climatologic effects, and (2) sediment and storm water control zone to reduce the impact of development upon freshwater wetlands and freshwater wetlands species." N.J.S.A. 13:9B-16a. The Act does not define the parameters of transition *236 areas but rather imposes that responsibility upon DEP, subject to statutory standards which include maximum and minimum widths. N.J.S.A. 13:9B-16b; N.J.S.A. 13:9B-17c. The erection of any structure, except a temporary structure of 150 square feet or less, the placement of pavement, the removal, excavation or disturbance of the soil, the dumping or filling of any material and the destruction of plant life are all prohibited in transition areas. N.J.S.A. 13:9B-17a. However, DEP may grant waivers from these prohibitions, if a property owner can satisfy the conditions set forth in N.J.S.A. 13:9B-18.
In order to place the issue on which I disagree with the majority in perspective, it is appropriate to outline the legislative history of the Act relating to transition areas. The Act was derived from Assembly Bills 2342 and 2499. Assembly Bill 2342 provided for regulation by DEP of both wetlands and adjoining areas, described as "buffer zones," which could extend up to 300 feet beyond the wetlands area. The bill also provided that it would take effect within 180 days of enactment. However, Assembly Bill 2499 provided for the regulation of wetlands only, not any adjoining areas, and delayed the effective date of the Act until the State secured authorization to take over the permit jurisdiction of the Army Corps of Engineers pursuant to the Federal Water Pollution Control Act, 33 U.S.C. § 1344. After conducting extensive public hearings, the Assembly Energy and Natural Resources Committee favorably reported a committee substitute for both bills. The committee substitute endorsed the provisions for wetlands buffer zones contained in A-2342, but renamed them "transition areas" and reduced the width of these areas to a maximum of 150 feet if they adjoin a wetland of "exceptional resource value" and 50 feet if they adjoin a wetland of "intermediate resource value." The committee substitute also endorsed the provision of A-2499 which provided that the Act would not take effect until the State received authorization to assume the wetlands permit jurisdiction of the Army Corps of Engineers.
*237 Subsequently, the Senate Energy and Environment Committee drafted its own substitute for the Assembly committee substitute, which was passed by both houses of the Legislature and signed by the Governor. While retaining most of the provisions of the Assembly committee substitute relating to transition areas, the Senate committee substitute substantially changed the provisions of the Assembly bill relating to the effective date of the Act. The pertinent section reads as follows:
This act shall take effect one year after enactment, except that section 25, section 26, section 27, section 30 and section 33 shall take effect immediately, and except that the department shall not implement the provisions of sections 16, 17 and 18 [the transition area requirements] until two years after enactment. The department shall take any administrative actions prior to the effective date of this act necessary to implement the provisions of this act on and after the effective date. [L. 1987, c. 156, § 34].
Significantly, the Senate Committee specifically described the intent of this section in a statement to its substitute bill:
The freshwater wetlands regulatory program established in this bill would be phased in over two years. This bill ... would take effect one year after enactment, with several important exceptions. The sections of the bill imposing the transition area requirements would not take effect until two years after enactment. [Statement to Senate Energy and Environment Committee Substitute for Assembly Committee Substitute for Assembly Bills Nos. 2342 and 2499, p. 5 (June 25, 1987); emphasis added].
One commentary has aptly stated that the Act, as it evolved through the legislative process, reflects a "delicate compromise" between environmentalists and developers. English & Sarno, The Freshwater Wetlands Protection Act: Give and "Take" in New Jersey, 12 Seton Hall Leg.J. 249 (1989).
Despite the explicit statement by the Senate committee which drafted the substitute bill enacted into law that "[t]he sections of the bill imposing the transition area requirements would not take effect until two years after enactment" and the well established principle that "[s]tatements appended to bills are useful aids in ascertaining legislative intent," Howard Savings Institution v. Kielb, 38 N.J. 186, 195, 183 A.2d 401 (1962), the majority concludes that the "plain meaning" of section 34 requires that the transition area requirements be applied to all *238 projects approved after July 1, 1988. Because the Legislature stated that other sections of the Act would "take effect" one year after enactment but also stated in the same section that the DEP should not "implement" the transition area requirements until two years after enactment, the majority reasons that the word "implement" must have a different meaning than the term "take effect." However, as anyone familiar with the legislative process is aware, statutory language is not always precise and clear, especially when it is hammered out in the rough and tumble of committee deliberations, and it is not uncommon for the Legislature to use different language to express the same objective. Moreover, the difference in language within section 34 may simply reflect a legislative impression that the transition area requirements would necessarily remain completely dormant until DEP adopted implementing regulations while other sections of the Act could become operative without any action by DEP. And even if the majority's assumption that "implement" and "take effect" must have different meanings were indulged, the meaning of the word "implement" as used in section 34 still would not be "plain."
Statutory interpretation should "turn on the breadth of the objectives of the legislation and the common sense of the situation" rather than "literalisms." Jersey City Chapter of Property Owner's Ass'n v. Jersey City, 55 N.J. 86, 100, 259 A.2d 698 (1969). In other words, "[w]e should assume the Legislature intended a reasonable approach, and we should construe the statute to provide one if we can." Roman v. Sharper, 53 N.J. 338, 341, 250 A.2d 745 (1969).
The majority fails to ascribe any reasonable purpose to the Legislature's making the transition area provisions of the Act "effective" on July 1, 1988, while prohibiting DEP from "implementing" them until July 1, 1989. Because N.J.S.A. 13:9B-16 confers the authority upon DEP to establish the parameters of transition areas, it cannot be determined from the Act itself whether particular property is located within a transition area. Consequently, the majority acknowledges that the transition *239 area sections of the Act could not become operative until DEP adopted implementing regulations. (At 233). Therefore, the import of the majority's opinion is that the transition area requirements did not take effect until July 1, 1989, when DEP's implementing regulations became operative, but that those regulations now apply retroactively to any development project which received site plan or subdivision approval between July 1, 1988 and July 1, 1989.
A regulation adopted by an administrative agency to implement legislation, such as DEP transition area regulations, is legislative in nature. Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 328-337, 478 A.2d 742 (1984). Consequently, administrative regulations are ordinarily construed to be solely prospective in operation. Bowen v. Georgetown University Hospital, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); see also 2 Davis, Administrative Law Treatise, § 7.23 (2d ed. 1979). In fact, our Supreme Court has indicated that one hallmark of an administrative regulation is that it has "prospective effect." Metromedia, Inc. v. Director, Div. of Taxation, supra, 97 N.J. at 329, 478 A.2d 742. Regulations ordinarily do not apply retroactively because "[p]ersons subject to regulation are entitled to something more than a general declaration of statutory purpose to guide their conduct before they are restricted or penalized by an agency for what it then decides was wrong from its hindsight conception of what the public interest requires in the particular situation." Boller Beverages, Inc. v. Davis, 38 N.J. 138, 152, 183 A.2d 64 (1962).
Since administrative regulations ordinarily operate only prospectively, it seems improbable that the Legislature intended the initial regulations of areas adjoining wetlands, adopted pursuant to enabling legislation reflecting a "delicate compromise" between environmentalists and developers, to apply retroactively to projects which were approved before the regulations were adopted. These regulations are substantive in nature and have enormous potential impact upon pending development plans. Property owners who obtained site plan or *240 subdivision approvals from July 1, 1988 to July 1, 1989 could not reasonably have anticipated what areas the DEP would designate as transition areas. Consequently, numerous approved plans undoubtedly include proposed development in areas which the DEP has now designated transition areas. If the property owners have already built in these areas, will they now be required to remove buildings or other structures unless DEP grants a transition area waiver pursuant to N.J.S.A. 13:9B-18? Or will property owners who have completed construction be exempted from the transition area requirements? If so, will property owners who commenced but did not complete construction in transition areas before July 1, 1989 be subject to these requirements? Will they now be required to halt construction in order either to litigate their right to complete their projects or to apply to DEP for transition area waivers? If the Legislature had actually intended the DEP's transition area regulations to apply retroactively, it undoubtedly would have addressed these questions rather than placing property owners with approved development plans in the uncertain state in which they will find themselves upon issuance of the majority's opinion.
The portion of N.J.S.A. 13:9B-4 quoted by the majority (at 230) and section 34 of the Act have different operative effects. N.J.S.A. 13:9B-4 establishes complete exemptions from all permit requirements of the Act. In contrast, section 34 establishes phased implementation of different provisions of the Act, including in particular transition area requirements. Thus, unless a property owner filed for site plan or subdivision approval prior to June 8, 1987 or received such approval prior to July 1, 1988, it would not be exempt under N.J.S.A. 13:9B-4d(1) and (2). Consequently, the property owner would be required to apply to DEP for a wetlands permit. However, this wetlands application would not be subject to transition area requirements if the development project received local land use approval prior to the effective date of those requirements. Therefore, there is no inconsistency between the subsections of N.J.S.A. 13:9B-4d *241 quoted by the majority and the conclusion that the transition area requirements apply only prospectively. Furthermore, to construe the provisions of the Act in a harmonious manner consistent with the committee statement to the substitute Senate bill, the phrase "effective date of this act," as used in the final sentence of N.J.S.A. 13:9B-4, should be construed to refer to the date on which the transition area requirements became effective pursuant to section 34, i.e., July 1, 1989.
If there were any doubt that the Legislature did not intend DEP's transition area regulations to apply retroactively, we should resolve that doubt in favor of the DEP's conclusion that its regulations apply only prospectively. It is firmly established that the courts "give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing." Smith v. Director, Div. of Taxation, 108 N.J. 19, 25, 527 A.2d 843 (1987). In light of the fact that the burden will now fall upon DEP to process applications for transition area waivers and other pleas for relief by property owners adversely affected by the retroactive application of the transition area regulations, this would be an especially appropriate case in which to apply this principle of judicial deference to the enforcing agency's interpretation of the statute.
Finally, I note that this court has previously held that the provisions of the Wetlands Act of 1970 regulating tidal and coastal wetlands did not become operative until they were implemented by DEP. Loveladies Property Owners Ass'n, Inc. v. Raab, 137 N.J. Super. 179, 348 A.2d 540 (App.Div. 1975). In that case, we stated that "[t]he intricacy of the statutory definition of `coastal wetlands,' coupled with the broad scope of `regulated activities,' and the administrative burden of classifying wetlands on a case by case basis, are strong, practical reasons for the position that enforcement of the act by permits for regulated activities is dependent upon the prior mapping of wetlands and the promulgation of a wetlands order." Id. at 184, 348 A.2d 540. We should be equally responsive to such *242 practical considerations in construing the Freshwater Wetlands Protection Act.
NOTES
[1] Appellants' appeal concerning the regulations on documented habitats for endangered or threatened species has been withdrawn.
[2] "FW-1" are wildlife waters, essentially not subject to human waste water; "FW-2" "TP" waters are "other freshwaters" providing areas for trout spawning. N.J.A.C. 7:7A-1.4.
[3] DEP's regulations concerning these exceptions are challenged in a separate appeal, also before us. See A-132-88-T5.
[4] DEP's brief which dismisses appellants' reliance on this section as an historical note following N.J.S.A. 13:9B-1 and as "provided by West Publishing and [of] no legal effect" is misleading. The "note" quotes from L. 1987, c. 156, § 34.
[5] At oral argument before us DEP could specify no local regulation which would be superceded, however.
[6] It would also appear contrary to legislative intent otherwise expressed to encourage a rush for municipal approvals in order to obtain permanent exemptions for future development. (See The Star-Ledger, May 14, 1989, § 1, at 25, col. 6, in which a member of an organization known as Save Our Swamp referred to a planning board application as a case of "`beat the clock'" because the 1989 regulations would limit the planned development. See also, N.Y. Times, July 30, 1989, § 12, at 9, col. 5.)
[7] The June 1987 Executive Order (175) directed DEP to formulate criteria "(1) for determining the extent of adequate freshwater wetland buffer areas and 2) for regulating development and construction activities in freshwater wetland buffer areas." There was a map of the State depicting "potential impacted wetlands" and a reference to the amount of relevant "acreage within pending applications" (5,601) attached to the order.
[8] These regulations are not before us. We have examined them as relevant to DEP's enumeration of activities it considered environmentally hazardous in addition to certain commercial activities. See Id. at 601, proposed N.J.A.C. 7:7A-7.2(c)7i.
[9] "Linear development" is partially defined as "roads, drives, railroads, sewerage and stormwater management pipes, gas and water pipelines...." N.J.S.A. 13:9B-3; N.J.A.C. 7:7A-1.4.
[10] While we recognize that under N.J.S.A. 2A:35A-4b a developer could be restrained from "pollution, impairment or destruction [of wetlands]", that Draconian remedy (primarily for private persons in the event of governmental inaction, Superior Air Prod. v. NL Industries, 216 N.J. Super. 46, 58, 522 A.2d 1025. (App.Div. 1987) is scarcely a substitute for DEP's power to require a developer, where feasible, to locate an unbuilt improvement a slight distance from a wetland area, a power which this statute confers, and which the regulation in question abrogates.
[11] DEP contends, and appellants do not deny, that appellants did not originally bring this action under the Environmental Rights Act. The first mention of the Environmental Rights Act is in their appellate brief.
[12] DEP also notes that, even if the Environmental Rights Act applied, appellants failed to provide the requisite notice to the Attorney General pursuant to N.J.S.A. 2A:35A-11. In light of our holding we need not comment on this claim.
[1] I also have joined in the majority's disposition of the companion appeal of the New Jersey Builders Association, captioned In the Matter of the Freshwater Wetlands Protection Act Rules, N.J.A.C. 7:7A-1.1 et seq., A-132-88T5, which involves challenges to various sections of the DEP's freshwater wetlands regulations.