790 A.2d 194

KNOWLTON RIVERSIDE ESTATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. THE PLANNING BOARD OF THE TOWNSHIP OF KNOWLTON, A DULY CONSTITUTED PUBLIC BODY AND MUNICIPAL AGENCY OF THE TOWNSHIP OF KNOWLTON, WARREN COUNTY, NEW JERSEY, DEFENDANT–APPELLANT, AND TOWNSHIP OF KNOWLTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted October 23, 2001—Decided February 5, 2002.

Before Judges SKILLMAN, CARCHMAN and WELLS.

*Hollander Hontz Weaver & Hinkes*, attorneys for appellant (*Mark J. Hontz*, of counsel and on the brief).

*Courter, Kobert, Laufer & Cohen*, attorneys for respondent (*Kevin M. Hahn*, of counsel; *Matthew C. Johnston*, on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This appeal involves the interpretation of *N.J.S.A.* 40:55D–52(d), which entitles a developer to a mandatory extension of the two-

year period of exemption from a change in the zoning of its property conferred by final subdivision approval, if the developer can prove it was "barred or prevented . . . from proceeding with the development because of delays in obtaining legally required approvals from other governmental entities and that [it] applied promptly for and diligently pursued these approvals."

On December 26, 1989, plaintiff's predecessor in title obtained conditional preliminary major subdivision approval for twenty-two residential building lots on a forty-three acre tract in Knowlton Township. The approved subdivision plan also included a nine acre lot for open space and water detention purposes.

When this approval was obtained, the property was zoned for single family homes on lots with a minimum size of one acre. In 1992, the Township adopted an amended zoning ordinance, under which plaintiff's property was placed in a Farmland Preservation Zone that requires a minimum of five acres for a residential building lot. However, under *N.J.S.A.* 40:55D–49(a), plaintiff's property was exempted from this zoning change for a three-year period following preliminary subdivision approval, and under the Permit Extension Act, *N.J.S.A.* 40:55D–130 to 136, this exemption was extended for an additional four years to December 31, 1996, *N.J.S.A.* 40:55D–133(a).

Near the end of this extension, plaintiff applied for final subdivision approval. On December 30, 1996, the defendant Knowlton Township Planning Board (Board) granted plaintiff final subdivision approval, which was memorialized by a resolution adopted on January 28, 1997. Pursuant to *N.J.S.A.* 40:55D–52(a), this final subdivision approval granted plaintiff an additional two-year exemption from the 1992 rezoning of its property. This approval was subject to twenty conditions, including "outside agency review," most of which had to be satisfied within ninety days.

However, because plaintiff was unable to satisfy these conditions in a timely manner, it had to apply for an extension of time, which the Board granted by a resolution adopted on June 24, 1997.

With respect to the condition that plaintiff obtain required outside agency review, this resolution stated:

[T]he Attorney for the Applicant indicates that they have begun the process of completing those approvals. It was recommended that the letters from those agencies be provided to the Secretary of the Board.

Plaintiff subsequently determined that there was a two-and-a-half foot error in the flood plain line shown on the maps submitted in support of its application for preliminary subdivision approval, which required a reconfiguration of the lots and a modification of the proposed detention basin. The Board concluded that these revisions in the subdivision plan "materially impacted" the preliminary and final major subdivision approvals. Therefore, the Board granted an amended final subdivision approval of a revised subdivision plan, which was memorialized by a resolution adopted on January 27, 1998. The Board also apparently concluded that this amended approval extended plaintiff's exemption from the 1992 rezoning of its property for another year, from January 28, 1999 to January 27, 2000.

On February 15, 2000, plaintiff applied to the Board for a one-year extension of the revised final subdivision approval granted on January 27, 1998. In support of this application, plaintiff claimed that it was entitled to a mandatory extension of time under N.J.S.A. 40:55D–52(d), because delays in obtaining legally required approvals from other governmental entities had prevented it from proceeding with the development. In the alternative, plaintiff requested the Board grant a discretionary one-year extension under N.J.S.A. 40:55D–52(a).

The Board conducted a two day evidentiary hearing, following which it voted to deny plaintiff's application for an extension of time under both N.J.S.A. 40:55D–52(d) and N.J.S.A. 40:55D–52(a). The Board concluded that plaintiff had failed to show that it had applied for and diligently pursued the required government approvals, or that there had been undue delay by any governmental entity in reviewing plaintiff's applications for those approvals. The Board also concluded that plaintiff had failed to show that the alleged delay in receipt of the required governmental approvals

had prevented it from proceeding with the subdivision prior to the January 27, 2000 deadline. Consequently, the Board ruled that plaintiff had failed to demonstrate its entitlement to an extension of time under *N.J.S.A.* 40:55D–52(d).

In addition, the Board found that plaintiff had not "duly recorded the plat" for its proposed subdivision, which is a precondition of seeking a discretionary extension under *N.J.S.A.* 40:55D–52(a). The Board also indicated that even if plaintiff had satisfied this precondition, it still would not have been granted a discretionary extension of time because plaintiff's proposed development was inconsistent with the Township's current master plan and zoning. Moreover, the Board noted that "[i]n light of [plaintiff's] difficulty in obtaining financing, the exhaustion of [its] financial resources and [its] history of abandoning partially completed subdivisions there is no assurance that this subdivision would be diligently and promptly completed to all required standards."

Plaintiff brought this action in lieu of prerogative writs challenging the denial of its application for an extension of the period of exemption from the 1992 rezoning of its property. In addition to challenging the denial, the complaint sought declaratory relief and damages based on a number of alleged constitutional violations.

The matter was brought before the trial court by an order to show cause, and the court decided to consider the validity of the Board's denial of plaintiff's extension application in a summary manner, see *R.* 4:67–1(b), severing the remaining counts of the complaint. The court concluded in an oral opinion, without detailed findings of fact, that even though plaintiff had not "acted with the greatest of speed" in seeking the required approvals from other governmental entities, it had nevertheless satisfied the requirement of *N.J.S.A.* 40:55D–52(d) that a developer "appl[y] promptly for and diligently pursue[ ] these approvals." The court also stated, again without detailed findings, that plaintiff had experienced "difficulties in obtaining a permit from one state agency, while another one was expiring[,][a]nd then going back to the other agency[.]" The court further indicated that if plaintiff had failed to show that it was entitled to a mandatory extension of

time under *N.J.S.A.* 40:55D–52(d), it would not have been entitled to a discretionary extension under *N.J.S.A.* 40:55D–52(a) because it had not satisfied the precondition of "duly record[ing] the plat" for its proposed subdivision. The court memorialized its decision by a final judgment, which reversed the Board's denial of plaintiff's application and granted a one-year extension of the exemption from the current zoning ordinance conferred by plaintiff's amended final subdivision approval. The judgment also dismissed the remaining counts of plaintiff's complaint "without prejudice." [1]

The Board appeals from the part of the final judgment which reversed its denial of plaintiff's extension application and extended the protection period under the final subdivision approval to January 28, 2001.[2] Plaintiff has not cross-appealed from the part of the judgment which dismissed its claim for relief under *N.J.S.A.* 40:55D–52(a) nor has it argued as an alternative grounds for affirmance that the Board erred in denying relief under this subsection.

---

[1] The judgment provides that if the Board does not appeal, the dismissal "shall automatically become *with prejudice* [,]" but that "[i]f the Defendant Board files a timely appeal ... the dismissal of the Third through Seventh Counts of Plaintiff's Complaint ... shall remain *without prejudice* and, if there is a subsequent reversal or remand, Plaintiff's rights to pursue those claims ... shall be preserved and Plaintiff will have the right to resurrect those claims and pursue them to the fullest extent of the law if it so chooses[.]" We have previously noted that an order which dismisses unresolved claims without prejudice to reinstatement after an appeal is not a final judgment appealable as of right to this court, and that such a disposition may not be used as "an artifice to foist jurisdiction upon this court." *CPC Int'l, Inc. v. Hartford Accident & Indem. Co.,* 316 *N.J.Super.* 351, 366, 720 *A.2d* 408 (App.Div.1998), *certif. denied,* 158 *N.J.* 74, 726 *A.2d* 937 (1999). Thus, this appeal would have been subject to dismissal as interlocutory. However, because the appeal has been fully briefed and the issues presented are of public significance, we have decided to address the merits.

[2] On September 7, 2000, the parties entered into a consent order which provides that the extension of plaintiff's final subdivision approval is tolled pending the outcome of this appeal, and that if this court affirms the judgment, plaintiff's extension will be extended for an additional 235 days from the date of our decision.

We conclude that the Board correctly found that plaintiff failed to show its entitlement under *N.J.S.A.* 40:55D–52(d) to a mandatory extension of the two-year period of exemption from the application of the 1992 revision of the Knowlton zoning ordinance. Therefore, we reverse the part of the judgment granting plaintiff an additional year of exemption from the rezoning.

*N.J.S.A.* 40:55D–52(d), which was part of a 1991 package of amendments to the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –136, *L.* 1991, c. 256, § 11, provides in pertinent part:

> The planning board shall grant an extension of final [major site plan or subdivision] approval for a period determined by the board but not exceeding one year from what would otherwise be the expiration date, if the developer proves to the reasonable satisfaction of the board that the developer was barred or prevented, directly or indirectly, from proceeding with the development because of delays in obtaining legally required approvals from other governmental entities and that the developer applied promptly for and diligently pursued these approvals.

There is no legislative history or case law illuminating the reason for enactment of this provision.[3] However, the apparent purpose of *N.J.S.A.* 40:55D–52(d) and other similar sections of the MLUL enacted in 1991 [4] was to establish fixed legal standards to govern a developer's application for an extension of the period of protection provided by subdivision and site plan approval based on delays in obtaining required governmental approvals, instead of requiring a developer to seek such relief under the essentially standardless discretion reposed in a planning board by *N.J.S.A.* 40:55D–52(a).

To be entitled to an extension under *N.J.S.A.* 40:55D–52(d), a developer must show to the "reasonable satisfaction" of the Board that (1) it "applied promptly for and diligently pursued [legally

---

[3] There is one Law Division decision that deals indirectly with *N.J.S.A.* 40:55D–52(d), but does not consider its purpose. See *Aronowitz v. Planning Bd. of Township of Lakewood,* 257 *N.J.Super.* 347, 360–68, 608 *A.*2d 451 (Law Div.1992).

[4] The 1991 amendments to the MLUL included similar provisions for mandatory extensions of the exemptions from zoning changes conferred by preliminary major site plan approvals, *N.J.S.A.* 40:55D–49f, minor subdivision approvals, *N.J.S.A.* 40:55D–47g, and minor site plan approvals, *N.J.S.A.* 40:55D–46.1c.

required approvals]"; (2) "there were delays in obtaining [those] approvals from other governmental entities"; and (3) those delays "barred or prevented" the developer, "directly or indirectly, from proceeding with the development." If a developer makes these factual showings, *N.J.S.A.* 40:55D–52(d) provides that "[t]he planning board shall grant an extension of [the] final approval." Thus, the grant of an extension of time under this subsection is mandatory, and a board's discretion is limited to determining the length of the extension.

■ Because a developer is entitled to a mandatory extension of time under *N.J.S.A.* 40:55D–52(d) if it makes the required factual showings, a court reviewing the denial of such an extension must determine whether there is sufficient credible evidence in the record to support the planning board's findings that the applicant failed to establish the facts that would entitle it to an extension. *See Rowatti v. Gonchar,* 101 *N.J.* 46, 51–52, 500 *A.*2d 381 (1985). If the record contains such evidence, the board's decision must be upheld.

■ In support of its claim to a mandatory extension under *N.J.S.A.* 40:55D–52(d) of the exemption from the rezoning of its property, plaintiff relies upon alleged delay by other governmental entities in granting three required approvals: (1) DEP's approval of plaintiff's removal of underground oil tanks; (2) DEP's issuance of a letter of interpretation confirming the delineation and classification of wetlands; and (3) DOT's grant of a road [opening] permit.[5] Plaintiff's applications and the processing each of these three required approvals by the DEP and DOT must be considered separately.

Initially, we reject plaintiff's argument that the Board should have considered only the period following the grant of plaintiff's revised final subdivision approval in determining whether it "ap-

---

[5] Before the trial court, plaintiff also argued that there had been undue delay by the Board in reviewing plaintiff's revised final subdivision maps. On appeal, plaintiff does not advance this argument.

plied promptly for and diligently pursued" the legally required approvals. The MLUL defines "[f]inal approval" as "the official action of the planning board taken on a preliminarily approved major subdivision or site plan, after all conditions, engineering plans and other requirements have been completed or fulfilled and the required improvements have been installed or guarantees properly posted for their completion, or approval conditioned upon the posting of such guarantees." *N.J.S.A.* 40:55D–4. Thus, a developer's obligation to obtain required approvals from other governmental entities does not commence with the grant of final subdivision approval. To the contrary, the MLUL envisions that a developer ordinarily will obtain such approvals before even applying for final subdivision approval. In fact, a developer may need to obtain certain governmental approvals before applying for preliminary subdivision approval. See *Field v. Township of Franklin,* 190 *N.J.Super.* 326, 331–33, 463 *A.2d* 391 (App.Div.), *certif. denied,* 95 *N.J.* 183, 470 *A.2d* 409 (1983). Moreover, the preliminary subdivision approval obtained by plaintiff's predecessor in 1989 was specifically conditioned upon plaintiff obtaining "all appropriate outside agency reviews including the ... New Jersey Department of Environmental Protection [DEP] and the New Jersey Department of Transportation [DOT]." Therefore, plaintiff's failure to obtain or maintain the effectiveness of such approvals during the more than eight year period between preliminary and final subdivision approval is clearly relevant to a determination whether plaintiff "applied promptly for and diligently pursued" the legally required approvals for its development.

We also reject plaintiff's argument that it should be deemed to have "diligently pursued" a legally required approval so long as it responded to an approving agency's request for additional documents or information before the deadline established under that agency's rules. Such a deadline reflects the maximum amount of time the agency considers reasonable for an applicant to respond to the agency under any circumstances. It does not mean that that is a reasonable time for any response to the agency, regardless of the type of information or number of documents requested

or the past course of dealings between the applicant and the agency. Therefore, the fact that plaintiff responded to each of the DOT's series of requests for additional documents and information relating to plaintiff's application for a highway access permit within the ninety day period allowed under the applicable DOT rule, *N.J.A.C.* 16:47–4.5(c), does not necessarily mean that plaintiff pursued that application diligently. Instead, plaintiff was required to demonstrate that its delays in responding to those requests were reasonable under the particular circumstances of this case.

One of the conditions of the original final subdivision approval the Board adopted on January 28, 1997 was that plaintiff "provide written proof and verification that all tanks have been removed from Lots 1.09, 1.10 and 1.11." To satisfy this condition, plaintiff contracted with an engineering company to locate and remove any underground oil tanks on the site. Although the contractor was unable to locate any tanks, the Township Engineer notified plaintiff the day before it was granted revised final subdivision approval that there apparently was at least one tank on the property. Moreover, a few weeks later, on February 13, 1998, the Township Engineer notified plaintiff of the specific location of "a pipe protruding from the ground" and suggested that plaintiff "retain a backhoe to further excavate this area." However, plaintiff's contractor took nine months from that date to locate and remove the two underground oil tanks found on the property, and plaintiff waited another two months, until January 12, 1999, before applying to the DEP for approval of the removal. The DEP granted this approval on August 11, 1999, which was five-and-a-half months before the January 27, 2000 expiration of the exemption from the rezoning of plaintiff's property provided by the revised final subdivision approval.

Based on this evidence, the Board found that plaintiff had not acted diligently in locating and removing the underground oil tanks and applying to the DEP for approval of the removal. The Board also noted that plaintiff had not presented any evidence that the time the DEP took to review this application was unrea-

sonable. In addition, the Board indicated that even if plaintiff had demonstrated its own diligence in resolving the tank removal issue and the DEP's delay in approving that removal, plaintiff still would not be entitled to relief under *N.J.S.A.* 40:55D–52(d) because the five-and-a-half month period between the DEP's approval of the tank removal on August 11, 1999 and the January 27, 2000 expiration date would have been sufficient for plaintiff to obtain the necessary financing and proceed with the subdivision. These findings are adequately supported by the record, and thus there was no basis for the trial court to reject this part of the Board's decision.

The requirement that plaintiff "obtain[ ] a letter of interpretation from the [DEP] to confirm the wetlands delineation as well as the wetlands classification" of its property was one of the conditions of the preliminary subdivision approval obtained by plaintiff's predecessor in title in 1989. Plaintiff's predecessor complied with this condition by obtaining the required letter of interpretation on July 3, 1990, but that letter had expired by January 27, 1998, when plaintiff received revised final subdivision approval. Although plaintiff should have been aware that the wetlands letter of interpretation had expired, it did not even retain an environmental consultant to apply for a new one until more than a year later, in the spring of 1999, and this consultant did not submit the required request and supporting information to the DEP until July 28, 1999. Plaintiff failed to present any explanation for this long delay in applying for a new wetlands letter of interpretation. The DEP issued the required letter on November 24, 1999, five months after the application.

Based on this evidence, the Board found that plaintiff "took absolutely no steps to renew its wetland permits between January 1998 and June 1999[,]" and that "[t]his 18 month period of inactivity represents a complete lack of diligence on the part of the [plaintiff]." The Board also found that there was no evidence of any undue delay by the DEP in considering plaintiff's request for a letter of interpretation. These findings are adequately sup-

ported by the record, and thus the trial court also erred in rejecting this part of the Board's decision.

The requirement that plaintiff obtain "all appropriate outside agency reviews ... including the [DOT]," was another one of the conditions of the preliminary subdivision approval obtained by plaintiff's predecessor in title in 1989. Plaintiff's predecessor complied with this condition by obtaining a DOT highway access permit in 1992. Plaintiff later obtained a series of extensions of this permit, the last of which expired on December 31, 1998. During these extensions, plaintiff met with the Township Engineer to discuss construction of the right-of-way, and on January 30, 1997, plaintiff posted a $5670 restoration bond for work within the right-of-way. However, plaintiff failed to perform this work prior to expiration of the last extension of the permit. Consequently, in January 1999, plaintiff had to apply to the DOT for a new highway access permit. Moreover, the revision in plaintiff's subdivision plan required by the discovery of the two-and-a-half foot error in the flood plain line necessitated changes in the highway access the DOT had approved in 1992.

On February 5, 1999, the DOT notified plaintiff that there were various deficiencies in the documents it had submitted in support of the application. On February 19, 1999, plaintiff submitted further documents to the DOT. On March 22, 1999, the DOT notified plaintiff that it still had not submitted all of the required documents and information. On April 13, 1999, plaintiff submitted some of the required additional documents and information, and on April 14, 1999, the DOT sent a letter listing the further documents and information plaintiff had to submit for the DOT to complete review of the application. On May 24, 1999 plaintiff responded to the DOT's request by submitting additional documents and information. However, on July 7, 1999, the DOT notified plaintiff that its submission still did not fully respond to the deficiencies the DOT had previously identified, and that plaintiff had to submit certain additional information and documents. Plaintiff did not respond to this notice until three months later, on

October 4, 1999, when it submitted certain additional information. On November 8, 1999, the DOT notified plaintiff that there were still deficiencies in the documents submitted in support of its application. Plaintiff did not submit the required revision in its highway access plans to the DOT until January 24, 2000. After reviewing those plans, the DOT notified plaintiff that it intended to approve the application, conditioned upon plaintiff submitting certain limited additional information.

At the hearing before the Board, plaintiff's traffic engineering consultant gave the following explanation for plaintiff's three month delay between July 7, 1999, and October 5, 1999 in responding to the DOT's request for additional document and information:

> [T]here were times, I'll be honest and say that we had got comments back from them and due to workload and that, and this didn't happen to be the number one priority in the office at the time, that we didn't jump on it the day it came in and start working on it. It's, you know, scheduling and other issues.

> But I think in an overall fashion, what was done here in the times between receipt of letters and redo is not, I don't think, unreasonable. It wasn't like it was just put away.

> There was one lapse. I think the longest lapse we had was—we had a two-month lapse between the July and the resubmittal to—

A member of the board then noted that plaintiff actually had taken three months to respond to the DOT's July 7, 1999 request for additional documents and information. Plaintiff's traffic engineering consultant also admitted that he was unable to identify any unreasonable delay by the DOT in responding to plaintiff's series of submissions in support of its application for a new highway access permit.

Based on this evidence, the Board found that plaintiff had failed to diligently pursue its application for a highway access permit, and that plaintiff had not shown any unreasonable delay on the part of the DOT in processing this application. The Board also noted that if plaintiff had diligently pursued and completed its work prior to the twice-extended expiration date of its initial permit, plaintiff would not even have been required to apply for a new access permit. These findings are adequately supported by

the record, and therefore the trial court should have upheld this part of the Board's decision.

In sum, the Board's findings that plaintiff failed to "appl[y] promptly for and diligently pursue[ ]" the required DEP and DOT approvals and that those agencies did not unduly delay in acting upon plaintiff's applications are supported by sufficient credible evidence. Therefore, the trial court erred in reversing the Board's decision denying plaintiff's extension application. Accordingly, we reverse the part of the judgment granting plaintiff an additional year of exemption from the rezoning of its property and remand for entry of judgment in favor of defendant Board.