ANDREW, J.T.C.
In this state tax case plaintiff, The Reuben H. Donnelley Corporation, seeks review of a decision of the Director, Division of Taxation revising the property fraction of plaintiffs business allocation factor for purposes of the Corporation Business Tax Act (CBT), N.J.S.A. 54:10A-1 et seq., for the tax years of 1988 and 1984.
Specifically, plaintiff maintains that the Director’s determination to exclude plaintiff’s “safe harbor leased” property from plaintiff’s property fraction was improper both substantively and procedurally. That is, it was substantively improper because the Director’s action was not authorized by statute, and even if it were legislatively allowable, the Director’s action to exclude plaintiff’s “safe harbor leased” property from its property fraction constituted administrative rule-making and is invalid for failure to comply with the procedural requisites of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 et seq.
Plaintiff, a Delaware corporation, conducted business activities in New Jersey during the tax years at issue, and thus, was subject to the CBT. Plaintiff taxpayer is the owner for federal income tax purposes of machinery and equipment which it has leased to other corporate entities for their use. These leases have been specifically characterized as “safe harbor leases” pursuant to § 168(f)(8) of the Internal Revenue Code.
Prior to the enactment of the Economic Recovery Tax Act of 1981 (ERTA), P.L. 97-34, it was not always readily apparent *244 whether a transaction was to be treated as a lease or a purchase for federal tax purposes. The appropriate characterization was important for federal tax purposes in order to determine who was entitled to investment tax credits and deductions for depreciation, rental payments, transactional costs, interest or other expenses. In the effort to determine whether a transaction was to be treated as a lease or a purchase for tax purposes a series of rules evolved from federal court decisions and Internal Revenue Service rulings. These rules focused not on the form, but rather on the economic substance, of the transactions to determine the owner of the property for tax purposes even though the parties to a transaction may have characterized it as a lease.
In 1981, ERTA introduced the safe harbor leasing rules which guaranteed that, if the requirements in IRC § 168(f)(8), as amended by P.L. 97-34, were satisfied, a lease of qualified property placed in service after 1980 would be considered a bona fide lease for federal tax purposes, even though the lease had no economic substance aside from federal tax benefits.[1] As a consequence, owners of property who could not use the tax benefits associated with the property could sell those benefits to nominal owner-lessors. As explained in the Standard Federal Tax Reports of Commerce Clearing House:
In a sale-leaseback safe harbor lease arrangement, the lessee-user of the property sells the property to the lessor and receives a down payment plus a note for the balance of the value of the property. The corporate-lessor, as taxpayer-owner of the property, claims the ACRS [accelerated cost recovery system] deductions and investment credit for the property. The lessee-user makes an annual rental payment for the use of the property, and receives payments for interest and principal on the lessor's note. In most sale-leaseback transactions, the rental and debt payments are equal, so that no money, except the down payment, is actually exchanged between the lessee-user and the *245 lessor. Such arrangement may be called a “wash” lease because of the equal rental and debt payments. [Stand.Fed.Tax Rep. (CCH) at 22,665]
In 1981, plaintiff entered into a number of equipment transactions which met all of the requisites of the safe harbor leasing rules. In these transactions plaintiff purchased from, and simultaneously leased to, the seller-lessee-user certain qualified property which enabled plaintiff as the purchaser-lessor to obtain all the federal tax benefits of an owner of property. As the Director notes, and plaintiff does not deny, these transactions were made solely for federal income tax purposes.[2]
In the CBT returns plaintiff filed with this State for 1981 through 1984 it included the safe harbor leased property in its property fraction. Following an audit of plaintiffs CBT returns for tax years 1981 through 1984 the Director, relying on a 1982 amendment to the CBT in L.1982, c. 50, deleted the safe harbor leased property from plaintiffs property fraction for the tax years of 1982, 1983 and 1984, because such property was not considered to be owned by plaintiff-taxpayer for CBT purposes for those tax years.
The Director did not dispute that the property or equipment at issue met all of the requisites of the federal safe harbor leasing rules, but rather maintained that New Jersey “uncoupled” the CBT from the provisions of the federal safe harbor leasing rules, and therefore, did not recognize safe harbor leases for any CBT purpose for tax years 1982 and thereafter.
At the present stage of this litigation, the only tax years in issue are 1983 and 1984. With respect to those tax years, the effect of the Director’s refusal to recognize safe harbor leased property for the purpose of plaintiff’s property fraction was to increase that fraction from 1.2433% to 8.3098% for 1983 and *246 from 1.6623% to 9.7428% for 1984.[3] In turn, the increase in plaintiffs property fraction resulted in an increase of plaintiff’s business allocation factor from .9044% to 3.2599% for 1983 and from 1.1282% to 3.8217% for 1984. As a result, plaintiff’s New Jersey corporation business taxes were increased by $141,331 in 1983 and $195,850 in 1984. With interest calculated to July 15, 1989, the amounts assessed by the Director were $229,759 for 1983 arid $296,844 for 1984 or a total of $526,603.
Plaintiff’s complaint challenges the entirety of this deficiency assessment on the basis that its safe harbor leased property was improperly excluded from its property fraction by the Director for each of the tax years of 1983 and 1984. Initially, plaintiff contends that the Director’s action exceeded his statutory authority. The Director, on the other hand, maintains that his determination was dictated by the legislative amendments to the CBT in L.1982, c. 50, and thus, it was appropriate to exclude plaintiff’s safe harbor leased property from plaintiff's property fraction. Additionally, plaintiff contends that, even if the exclusion of safe harbor leased property from plaintiff’s property fraction were authorized by the 1982 amendments to the CBT, the Director could only accomplish that purpose by the adoption of a rule in accordance with the APA. In response, the Director maintains that appropriate rules were adopted.
On these issues both plaintiff and the Director have moved for summary judgment. Plaintiff concedes that there is no dispute concerning the Director’s computation of the deficiency assessment if, in fact, the Director’s exclusion of the safe harbor leased property from plaintiff’s property fraction is legally appropriate.
*247 I.
Although the issue in this ease implicates only the property fraction, it is helpful to first review the fashion in which the CBT operates. This court recounted that process in Hess Realty Corp. v. Taxation Div. Director, 10 N.J.Tax 63 (Tax Ct.1988) as follows:
The CBT, enacted in 1945, imposes a franchise tax on every nonexempt foreign and domestic corporation “for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.” N.J.S.A. 54:10A-2. The amount of the franchise tax which is assessed annually to the taxpayer is computed by reference to the corporation’s entire net income and entire net worth.l N.J.S.A. 54:10A-5.
Entire net income is defined as “total net income from all sources,” N.J.S.A. 54:10A-4(k), while entire net worth is essentially “the present value of the investment in the corporation.” Werner Machine Co. v. Director of Division of Taxation, 17 N.J. 121, 124, 110 A.2d 89 (1954). N.J.S.A. 54:10A-4(d). In the case of a taxpayer-corporation maintaining a regular place of business outside this State (other than a statutory office), only a portion of its entire net income and entire net worth is used as a measure of the franchise tax. N.J.S.A. 54:10A-6. This is in recognition of the fact that only a portion of the taxpayer’s net income and net worth are fairly attributable to its corporate activity in New Jersey. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 322, 478 A.2d 742 (1984). Therefore, N.J.S.A. 54:10A-6 (§ 6) provides a legislative formula called a “business allocation factor” which is used to determine those portions of a taxpayer’s net income and net worth that are to be used in the measure of the tax. As explained in Metromedia, Inc.:
The allocation formula consists of three factors, namely, property, payroll and receipts. Each of the three factors in the so-called three-ply formula is expressed as a fraction, the numerator of which is, respectively, the taxpayer’s New Jersey property, receipts, and payroll, and the denominator of which is the taxpayer’s total property, receipts and payroll generated by the operations of the entire enterprise. N.J.S.A. 54:10A-6(B). These fractions are averaged, and the combined fraction is then applied to the taxpayer’s total net worth and net income in order to determine the percentage or portion of net worth and income properly attributable, and thus taxable, to New Jersey. [97 N.J. at 322-323, 478 A.2d 742]
If a taxpayer, however, does not maintain a regular place of business outside this State other than a statutory office then § 6 mandates that the taxpayer’s business allocation factor shall be 100%. In other words, all of the taxpayer’s business activity is attributed to this State and thus § 6 requires the taxpayer, without apportionment, to include all of its net income and net worth as the measure of its New Jersey franchise tax.2
If the business allocation factor that is required to be used pursuant to the statutory direction in § 6, however, does not do justice to either the taxpayer or the State because it does not fairly reflect a taxpayer’s New Jersey business activities, N.J.S.A. 54:10A-8 (§ 8) gives the Director discretionary authority to *248 adjust the business allocation factor. SMZ Corp. v. Taxation Div. Director, 193 N.J.Super. 305, 315-316, 473 A.2d 982 (App.Div.1984). This broad authority is designed to enable the Director to make any number of adjustments which are “calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to [this] State.” N.J.S.A. 54:10A-8. [Id. at 65-66]
1 Since the tax years at issue the Legislature has enacted a phased-out repeal of the net worth provision of the CBT. L.1982, c. 55.
2 The apportionment fraction ultimately determined, whether 100% or less, is then multiplied by the tax rate to determine tax liability. The applicable income tax rate was 9%, N.J.S.A. 54:10A-5(c), while the net worth tax rate was 2 mills, N.J.S.A. 54:10A-5(a).
II.
Under the CBT, the starting point for the determination of the “entire net income” tax base is taxable income, before the net operating loss deduction and special deductions, which the taxpayer is required to report for federal income tax purposes. N.J.S.A. 54:10A-4(k). Thereafter, the CBT specifically deviates from federal taxable income by providing its own inclusions and exclusions from the tax base. Ibid.
Since the entire net income tax base is tied to federal taxable income, the Director contends that the Legislature amended the CBT in 1982 in order to avoid a potential loss of revenue due to the adoption of rules at the federal level permitting both safe harbor leases and rapid property depreciation allowances through the accelerated cost recovery system (ACRS). In contrast, plaintiff maintains that the 1982 amendments to the CBT clearly indicate the intent of the Legislature to permit safe harbor leased property to be included in the property fraction of a nominal owner-lessor of such property.
The CBT was amended in 1982 by L.1982, c. 50 as follows:
(1) Entire net income shall exclude for the periods set forth in [N.J.S.A. 54:10A — 4(k)(2)(F)(i) ] ... any amount ... which is included in a taxpayer’s federal taxable income solely as a result of an election made pursuant to the provisions of [I.R.C. § 168(f)(8) (safe harbor lease provision)]. [N.J.S.A. 54:10A-4(k)(l)
(2) Entire net income shall be determined without the exclusion, deduction or credit of:
*249 (F)(i) The amount by which depreciation ... exceeds the amount of depreciation determined in accordance with the Internal Revenue Code provisions in effect prior to January 1,1981, but only with respect to a taxpayer’s accounting period ending after December 31, 1981____
(F)(ii) For the periods set forth in subparagraph (F)(i) of this subsection, any amount ... which the taxpayer claimed as a deduction in computing federal income tax pursuant to a qualified lease agreement under [I.R.C. § 168(f)(8) ]. [N.J.S.A. 54:10A-4(k)(2)(F)(i) and -4(k)(2)(F)(ii); emphasis supplied]
Lastly, and most important according to plaintiff, the statutory provision for the property fraction in N.J.S.A. 54:10A-6(A) was amended in 1982 by the addition of the underscored portion:
The average value of the taxpayer’s real and tangible personal property within the State during the period covered by its report divided by the average value of all the taxpayer’s real and tangible personal property wherever situated during such period; provided, however, that for the purpose of determining average value, the provisions with respect to depreciation as set forth in [N.J.S.A. 54:10A-4(k)(2)(F) ] shall be taken into account for arriving at such value.
Plaintiff maintains that the language of the 1982 amendments to the CBT does not in any way exclude plaintiffs safe harbor leased property from the property fraction, nor does the amendatory language purport to modify the property fraction. On the contrary, plaintiff insists that the amendment to the statutory provision for the property fraction in N.J.S.A. 54:10A-6(A) reflects that the Legislature specifically intended safe harbor leased property to be included in a lessor’s property fraction. Plaintiff first notes that the amending language requires that the provisions of N.J.S.A. 54:10A-4(k)(2)(F) with respect to depreciation be taken into consideration in any determination of the average value of a taxpayer’s real and tangible personal property both within and outside this State. Plaintiff then points out that N.J.S.A. 54:10A-4(k)(2)(F) has two parts, “F(i), which denies for CBT purposes the excess depreciation allowed by the [fjederal accelerated provisions (ACRS), and F(ii) which denies for CBT purposes the entire depreciation deduction for [safe harbor lease] property allowed for [fjederal income tax purposes.”
*250 Next, plaintiff observes that the purpose of the amendment to the property fraction provision in N.J.S.A. 54:10A-6(A) was to prevent a reduction in the value of property for CBT purposes by the amount of excess depreciation permitted under the federal ACRS as outlined in (F)(i) and the entire depreciation deduction for safe harbor leased property as outlined in (F)(ii). Thus, plaintiff concludes, the Legislature must have intended to include safe harbor leased property in the property fraction of the owner-lessor, otherwise it would have been unnecessary to take into account the disallowance of depreciation for such safe harbor leased property. Plaintiff maintains that any other construction would violate the principle of statutory interpretation that a court must avoid any interpretation “that will render any part of a statute inoperative, superfluous or meaningless.” See Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 521, 472 A.2d 517 (1984).
In response, the Director asserts that the legislative purpose of the 1982 amendments to the CBT in L.1982, c. 50 was to modify the effect of the accelerated depreciation allowances permitted by the federal ACRS and to nullify all of the effects of the federal safe harbor leasing provisions for purposes of the CBT, in order to avoid an anticipated revenue loss. The Director notes that the 1982 amendment in N.J.S.A. 54:10A-4(k)(1) excludes (with an exception not here pertinent) from the entire net income tax base, any income which was included in a taxpayer’s federal taxable income solely as a result of a safe harbor leasing election.[4] Additionally, as previously noted, the 1982 amendment in N.J.S.A. 54:10A-4(k)(2)(F)(ii) provided that any deductions taken by a taxpayer in computing federal taxable income such as interest expense, transactional costs or rent as a result of a safe harbor leasing election were to be *251 added back to federal taxable income in computing entire net income for CBT purposes.
The Director points out that these amendatory provisions demonstrate that the Legislature intended to nullify all effects of a safe harbor leasing transaction in New Jersey for CBT purposes. In accordance with this interpretation, the Director adopted a policy, reflected in N.J.A.C. 18:7-5.2(a)(10), -5.2(a)(ll), -5.2(b)(4), -5.2(b)(5) and -5.2(b)(6), which does not recognize safe harbor leasing transactions. The Director asserts that his interpretation, policy and regulations are entitled to substantial weight in this court’s consideration of the meaning of the 1982 amendments of the CBT.
For reasons to be hereinafter stated, I find that I am in agreement with the Director’s position. The Director’s interpretation of the 1982 amendments to the CBT in L.1982, c. 50 is plainly reasonable, and thus, is entitled to prevail in this case. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984). In reaching this conclusion, I have accorded deference to the contemporaneous construction, usage and practical interpretation given to the 1982 CBT amendments by the Division of Taxation, the administrative agency charged with the implementation and enforcement of the statutory scheme. See Smith v. Director, Div. of Taxation, 108 N.J. 19, 25-26, 527 A.2d 843 (1987); Malone v. Fender, 80 N.J. 129, 137, 402 A.2d 240 (1979); Service Armament Co. v. Hyland, 70 N.J. 550, 561, 362 A.2d 13 (1976). I also note the strong presumption of reasonableness that a court must accord an administrative agency’s exercise of statutorily delegated responsibility. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-563, 384 A.2d 795 (1978).
To begin with, in the area of statutory construction, the primary aim in the interpretation of a statute is to determine the fundamental purpose for which the legislation was enacted. N.J. Builders, Owners and Managers Association v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972). As our Supreme *252 Court observed in Jersey City Chap. Prop. Owner’s, etc., Assoc, v. City Council, 55 N.J. 86, 259 A.2d 698 (1969):
When all is said and done, the matter of statutory construction here will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation. [At 100, 259 A.2d 698]
There is no dispute that L. 1982, c. 50 was New Jersey’s legislative response to the special depreciation (ACRS) and safe harbor leasing provisions adopted by the federal government. The purpose was to nullify the effect these provisions would have on the revenue raising capability of this State’s CBT.[5] Yet, plaintiff, while conceding that the 1982 amendment excluded safe harbor lease rental income from the entire net income tax base and from the receipts fraction,[6] maintains that the Legislature specifically intended to permit safe harbor leased property to be included in an owner-lessor’s property fraction. In other words, it is plaintiff’s position that the Legislature excluded the rental income of a safe harbor lease from the entire net income tax base and the receipts fraction, but permitted the very property giving rise to that excluded income to be included in the property fraction. This just does not make sense in light of the purpose of the business allocation factor.
As previously noted, the purpose of the three-part business allocation factor was, and is, to measure the portion of a taxpayer’s corporate activity that is fairly attributable to a particular taxing jurisdiction, in this case — to New Jersey, in order “to effect a fair and proper allocation of [a taxpayer’s] entire net income and ... entire net worth reasonably attributa *253 ble to [this] State.” N.J.S.A. 54:10A-8; F.W. Woolworth Co. v. Director of Div. of Tax, 45 N.J. 466, 496, 213 A.2d 1 (1965).
This three-part formulation has been considered to be a “benchmark” methodology “precisely because payroll, property, and sales appear in combination to reflect a very large share of the activities by which value is generated.” Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 170, 183, 103 S.Ct. 2933, 2943, 2949, 77 L.Ed.2d 545, 556, 565 (1983).
The legislative determination in the 1982 amendments to the CBT to: (1) exclude rental income from the entire net income tax base of a safe harbor lease lessor and (2) require the addition to federal taxable income of any item claimed as a deduction as the result of a safe harbor leasing election in computing the entire net income tax base, reveals a legislative recognition that safe harbor leasing transactions do not reflect the actual level of activity of the purchaser-lessor within a particular jurisdiction because these transactions have no economic substance aside from federal income tax benefits.
Thus, safe harbor leasing transactions are disregarded for purposes of determining entire net income and the receipts fractions of the business allocation factor. No one disputes that conclusion. If the purpose of the business allocation factor is to determine the level of activity attributable to a particular state, then it makes just as much sense to exclude from the property fraction the property that gives rise to the income that must be excluded from the receipts fraction and the entire net income tax base. There does not appear to be any good reason for not doing so. In any event, plaintiff has offered none. Additionally, there does not appear to be any policy consideration which could have motivated the Legislature to intend the consequence suggested by plaintiff. Aside from the common sense of the situation, the argument advanced by plaintiff, while perhaps superficially appealing, has inconsistencies.
The premise of plaintiff’s argument is that the statutory provision relative to the “average value” of the property to be *254 included in the property fraction was amended in 1982 to require that, in the computation of such average value, “the provisions with respect to depreciation as set forth in [N.J.S.A. 54:10A-4(k)(2)(F) ] shall be taken into account....” N.J.S.A. 54:10A-6(A). As previously noted, N.J.S.A. 54:10A-4(k)(2)(F) has two parts, i.e., (F)(i) and F(ii). (F)(i) specifically denies, for CBT purposes, the excess depreciation permitted by the federal accelerated depreciation rules (ACRS). (F)(ii), according to plaintiff, denies, for CBT purposes, the entire depreciation deduction for safe harbor leased property allowed for federal income tax purposes. Thus, plaintiff contends that it would have been unnecessary to deny depreciation for safe harbor leased property, if as the Director contends, safe harbor leased property was never intended to be included in the property fraction in the first place.
The sophistry in plaintiffs argument lies in the fact that (F)(i) speaks of a denial of excess depreciation, while (F)(ii) denies all deductions related to safe harbor leased property. While, technically, depreciation is a deduction used in computing federal taxable income, the clear purport of the use of the word deduction in the statutory phrase which denies the deduction from the CBT entire net income tax base of “any amount ... which the taxpayer claimed as a deduction in computing federal income tax pursuant to a [safe harbor lease]” does not mean depreciation but rather any and all deductions, other than depreciation, that are associated with safe harbor leasing transactions such as interest, transactional costs and rental expense. The disallowance of all deductions related to a safe harbor leasing election coupled with the allowance of a corresponding deduction for any income included in federal taxable income solely as the result of a safe harbor leasing election demonstrates that the Legislature intended that safe harbor leases were to have no effect for CBT purposes.
The reference in N.J.S.A. 54:10A-6(A) with respect to depreciation as set forth in N.J.S.A. 54:10A-4(k)(2)(F) relates only to subsection (F)(i) since that is the only subsection that speaks specifically of depreciation. Subsection (F)(ii) speaks of deduc-
*255 tions in computing federal taxable income. Although, as previously indicated, the word deduction may technically include depreciation, it is evident that the Legislature did not mean depreciation, but rather a complete nonrecognition of safe harbor leasing transactions in its employment of the term deduction. My reading of the property fraction provision in N.J.S.A. 54:10A-6(A) leads to the conclusion that the reference to depreciation in N.J.S.A. 54:10A-4(k)(2)(F) is limited to subsection (F)(i).[7] Plaintiff’s construction of the statutory language simply defies the obvious purpose of the Legislature in the enactment of L. 1982, c. 50.
Additionally, if plaintiff’s construction is correct, one must ask why the Legislature decided to treat safe harbor leased property differently than all other property includable in the property fraction. As previously noted, plaintiff contends that subsection (F)(i) of N.J.S.A. 54:10A-4(k)(2) was designed to deny excess depreciation permitted by the federal accelerated depreciation rules (ACRS), while subsection (F)(ii) was designed to deny all depreciation with respect to safe harbor leased property. What purpose did the Legislature have in mind in treating these types of property differently. This court has not unearthed any explanation nor has plaintiff offered any for such discriminatory treatment. A lack of an explanation supports the view that the Legislature did not have depreciation in mind in subsection (F)(ii) but rather a total nonrecognition of safe harbor leases for CBT purposes in that all deductions related to safe harbor leases were denied.
While, in the context of this case, the 1982 amendments to the CBT could have been more artfully phrased, the legislative purpose is sufficiently clear. As Chief Justice Weintraub once *256 observed: “It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature....” New Capital Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160, 135 A.2d 465 (1957).
There is one additional provision in the 1982 amendments to the CBT that supports the Director’s construction. The definition of the net worth tax base was also amended by L. 1982, c. 50. N.J.S.A. 54:10A-4(d) provided that net worth “shall not include any deduction for the amount of the excess depreciation described in paragraph (2)(F) of subsection (k) of this section [N.J.S.A. 54:10A-4(k)(2)(F)].”
For net worth tax base purposes, then, only excess depreciation described in N.J.S.A. 54:10A-4(k)(2)(F) is disallowed. This would mean that depreciation would be allowable for safe harbor leased property if such safe harbor leasing transactions were to be recognized for CBT purposes. Thus, if plaintiff’s construction of N.J.S.A. 54:10A-6(A), -4(k)(2)(F)(i) and -4(k)(2)(F)(ii) were accepted, it would lead to the conclusion that no depreciation of safe harbor leased property would be permissible for the entire net income tax base but only excess depreciation would be denied for purposes of the net worth tax base. This inconsistency in the tax bases simply makes no sense.
If, on the other hand, the Director’s construction of the 1982 amendment to the CBT is accepted, there is no inconsistency. This is so because safe harbor leasing transactions are just not recognized for CBT purposes. Thus, the net worth provision need only refer to a denial of “excess depreciation” in N.J.S.A. 54:10A-4(k)(2)(F) because safe harbor leased property is not included in a nominal owner-lessor’s net worth at all.
For the reasons expressed, the 1982 amendments to the CBT in L. 1982, c. 50 uncoupled the CBT from not only the excess depreciation permitted by federal accelerated depreciation rules (ACRS) but also from all effects of the federal safe harbor leasing provisions. Therefore, plaintiff, as the nominal owner-lessor of safe harbor leased property, is not permitted to *257 include such property in its property fraction for the tax years at issue.
III.
Next, plaintiff maintains that if this court sustains the Director’s interpretation of the 1982 amendment to the CBT, then the Director’s interpretation, that plaintiff’s safe harbor leased property is not includible in its property fraction, constituted administrative rule-making and is invalid for failure to comply with the requirements of the APA.
Plaintiff contends that the Director’s position with respect to the property fraction of the business allocation factor, prior to the 1982 amendments to the CBT in L.1982, c. 50, was reflected in N.J.A.C. 18:7-8.1 as follows:
18:7-8.1 Business allocation factor; computation
(a) The business allocation factor is computed on the basis of the average percentage resulting from the following three fractions:
1. Average value of real and tangible personal property in New Jersey over the average value of such property both within and without New Jersey (this is usually referred to as the property fraction).
Plaintiff then observes that this regulation was never modified by the Director, after L.1982, c. 50 was enacted, in order to exclude safe harbor leased property from the property fraction of owner-lessors of such property even though it was apparently the practice of the Director to allow safe harbor leased property to be included in the property fraction of owner-lessors for tax year 1981. Thus, plaintiff contends, relying upon Metromedia, Inc. v. Director, Div. of Taxation, supra, that even if the Director’s interpretation of the 1982 amendments to the CBT is correct, plaintiff’s safe harbor leased property is includible in its property fraction because the Director never modified N.J.A.C. 18:7-8.1.[8]
*258 I am not persuaded by plaintiff’s argument. To begin with, the apparent variance or change in the Director’s position was specifically dictated by the 1982 amendments to the CBT. As previously noted, N.J.S.A. 54:10A-4(k)(2)(F)(i) specified the periods for which the accelerated depreciation rules and safe harbor leasing provisions were to be permitted or not for CBT purposes. By permitting plaintiff’s safe harbor leased property to be included in plaintiff’s property fraction for 1981, the Director was merely following the statutory directive.
Secondly, the regulation, N.J.A.C. 18:7-8.1, to which plaintiff makes reference, is not a definitional regulation. It does not purport to define what should or should not be included in the property fraction, itself. On the contrary, the regulation merely instructs as to the manner in which the business allocation factor is computed. Its purpose is not to define the composition of the business allocation factor nor any of its three components.
Lastly, and most important, I find the Director’s interpretation, that the safe harbor leased property of an owner-lessor is not to be included in the owner-lessor’s property fraction, is plainly inferable from the language of the 1982 amendments to the CBT in L.1982, c. 50. Therefore, there was no need for the Director to have first adopted a formal regulation or otherwise to have complied with the requisites of the APA. See Metromedia, Inc. v. Director, Div. of Taxation, supra, 97 N.J. at 329, 478 A.2d 742; see also Airwork Ser. Div. v. Director, Div. of Taxation, 97 N.J. 290, 478 A.2d 729 (1984); R.H. Macy Co. Inc. v. Director, Div. of Taxation, 77 N.J.Super. 155, 179-180, 185 A.2d 682 (App.Div.1962), aff’d o.b. 41 N.J. 3, 194 A.2d 457 (1963).
In light of the foregoing, the Director’s motion for summary judgment is granted. Plaintiff’s motion is denied. The Clerk *259 of the Tax Court is directed to issue judgment affirming the Director’s determination.

 In 1982, the Tax Equity and Fiscal Responsibility Act (TEFRA), P.L. 97-248, restructured the ERTA safe harbor lease rules. It provided reduced tax benefits for leases entered into, or property placed in service, generally after July 1, 1982 and repealed the safe harbor lease rules effective for leases entered into after 1983 except for certain mass commuting vehicles and coal gasification facilities. The safe harbor lease rules, however, continue to apply for the duration of those leases which met the appropriate requirements.

 One of plaintiff's lease agreements was made part of the record by the Director. The agreement clearly demonstrates that the purpose of the sale-leaseback transaction was to take advantage of the beneficial federal income tax treatment for equipment leases.

 Inasmuch as the property fraction is expressed in terms of á numerator consisting of the taxpayer’s New Jersey property and a denominator consisting of taxpayer’s total property, it is obvious that the increase in the property fraction is a reflection of the fact that plaintiff had a much greater amount of safe harbor leased property located outside of New Jersey than in New Jersey. See N.J.S.A. 54:10A-6(A).

 N.J.S.A. 54:10A-4(k)(1) provides in pertinent part:
Entire net income shall exclude for the periods set forth in [N.J.S.A. 54:10A-4(k)(2)(F)(i) ], any amount ... which is included in a taxpayer’s federal taxable income solely as a result of an election made pursuant to the provisions of [I.R.C. § 168(f)(8) (safe harbor lease provision)].

 Even plaintiff concedes that L.1982, c. 50 effected a partial uncoupling from the federal accelerated depreciation provisions and the safe harbor leasing rules adopted in ERTA.

 See American Tel. & Tel. v. Taxation Div. Director, 4 N.J.Tax 638, 648 (Tax Ct.1982), affd 194 N.J.Super. 168, 476 A.2d 800 (App.Div.1984) in which Judge Crabtree of this court held that "the composition of the receipts fraction must be determined in harmony with the definition of entire net income.” In other words, whatever is included in the entire net income tax base must be included in the receipts fraction and whatever is excluded from the former must be excluded from the latter. Ibid.

 This construction does not run afoul of the principle that any construction that renders a part of a statute superfluous or meaningless must be avoided. The reason is that the Legislature was not referring to depreciation in subsection (F)(ii), but rather to all deductions, other than depreciation, taken as a result of a safe harbor leasing election for federal tax purposes, that would be ignored for CBT purposes because safe harbor leasing transactions would not be recognized for CBT purposes by this State.

 plaintiff also maintains that the Director’s failure to adopt or modify a regulation with respect to the exclusion of safe harbor leased property is underscored by the Director’s modification of his regulations excluding the receipts from safe harbor leased property from the receipts fraction in N.J.A.C. 18:7-8.7. As the Director persuasively indicates, the modification of N.J.A.C. *258 18:7-8.7 came as a result of the Appellate Division affirmance of a Tax Court decision in American Tel. & Tel. v. Taxation Div. Director, supra, not in response to the 1982 amendments to the CBT.