The opinion of the court was delivered by
DREIER, J.A.D.
Plaintiff, The Ruben H. Donnelley Corp., appeals from a summary judgment entered in the Tax Court determining that *257 the value of property owned by Donnelley, subject to (federal) “safe-harbor lease” deductions, was to be excluded from Donnelley’s personal property included in the corporation business tax valuation formula under N.J.S.A. 54:10A-6. There is no dispute as to any material fact concerning the amounts of property owned subject to a safe-harbor lease;[1] both sides agreed that only a legal determination was required by the Tax Court judge.
The trial judge’s opinion is reported at 11 N.J. Tax 241 (Tax Ct.1990). It clearly delineates the parties’ respective positions and the issues presented, as well as the court’s conclusions. We thus need but briefly summarize the parties’ arguments, although we draw a different legal conclusion from that reached by the Tax Court judge concerning defendant’s assessment of the corporation business tax for the years 1983 and 1984.
The overall scheme of the corporation business tax imposed under N.J.S.A. 54.10A-1 et seq. is that the tax is based upon both the corporation’s net worth, N.J.S.A. 54:10A-5(a), and its income, N.J.S.A. 54:10A-5(c). Where a corporation maintains at least one regular place of business outside New Jersey, the total net worth and income upon which the tax is computed is multiplied by a fraction. The fraction is actually the average of three fractions determined under N.J.S.A. 54:10A-6(A), (B) and (C), relating respectively to real and personal property, receipts used in the computation of net income for federal tax purposes, and wages, salaries and other personal service compensation. In each category a fraction is constructed; the numerator represents the respective property, receipts, or wages and *258 salaries, within the State of New Jersey, and the denominator represents the total of such property, receipts, or wages and salaries.
In 1981, Congress enacted the Economic Recovery Tax Act, P.L. 97-34, effective August 13, 1981, under which the leasing of certain machinery, equipment and other property, designated “safe harbor lease property” was entitled to special federal tax treatment under Sec. 168(f)(8) of the Internal Revenue Code, 1954. As amended by the 1981 legislation, the federal statute provided that the lessor was to “be treated as the owner of the property,” and thus was entitled to depreciation deductions with respect to safe harbor leased property. Although the Act was soon amended to delete this favorable tax treatment, property already subject to the Act retained its beneficial tax status.
Plaintiff entered into a number of purchases and leases of property which qualified under Sec. 168(f)(8), and in its federal tax returns for 1981 through 1984, plaintiff treated the property as safe harbor leased property and claimed depreciation for federal tax purposes. Plaintiffs New Jersey corporation business tax returns also included the property subject to safe harbor leases in the property factor required by N.J.S.A. 54:10A-6. For the years in question, 1983 and 1984, the State excluded safe harbor leased property from plaintiff's property factor, resulting in a combined tax deficiency of $526,603.[2]
When the federal government recognized the lessor as the owner of safe harbor leased property for tax purposes, this decision affected states that coupled their own corporation business tax calculations with those under federal law. This was true in New Jersey. Insofar as the income allocation *259 factor is a component of the corporation business tax, New Jersey looks to federal law, N.J.S.A. 54:10A-4(k), but provides some additional inclusions and exclusions from the tax base. After enaction of the federal safe harbor leasing provisions, the New Jersey Legislature amended the Corporation Business Tax Act by L. 1982, c. 50 so that neither accelerated depreciation deductions generally, nor any safe harbor lease deductions could be claimed as income credits; the definition of “entire net income” in N.J.S.A. 54:10A-4(k)(2)(F)(i) and (ii) was amended accordingly. This amendment was recognized by the trial judge. See 11 N.J.Tax at 248-249.
It is at this point that we depart from the trial judge’s analysis, for the Legislature did not merely amend the income component of the allocation formula. It also amended the property allocation formula. N.J.S.A. 54:10A-6(A). The preamendment section provided, as noted earlier, that the numerator contained “[t]he average value of the taxpayer’s real and tangible personal property within the State during the period covered by its report,” and the denominator was “the average value of all the taxpayer’s real and tangible personal property wherever situated during such period.” The 1982 Act added the following language:
provided, however, that for the purpose of determining average value, the provisions with respect to depreciation as set forth in [N.J.S.A. 54:10A-4(k)(2)(F)] shall be taken into account for arriving at such value. (Emphasis added).
The Tax Court judge read the words “with respect to depreciation” as including not only the depreciation factor in N.J.S.A. 54:10A-4(k)(2)(F)(i) (the accelerated depreciation formerly permitted by federal law), but also the safe harbor lease “deduction” removed from the income factor by subparagraph F(ii). The judge reasoned that if both the excess depreciation and the safe harbor lease deduction were not to be realized for the income factor, the Legislature also must have meant that they both should be omitted from the property factor. The judge stated:
The disallowance of all deductions related to a safe harbor leasing election coupled with the allowance of a corresponding deduction for any income *260 included in federal taxable income solely as a result of a safe harbor leasing election demonstrates that the Legislature intended that safe harbor leases were to have no effect for CBT purposes. (Emphasis in original).
11 N.J.Tax at 254.
To reach this result, the trial judge read the word “depreciation” in N.J.S.A. 54:10A-6(A) as if it were “deduction.” He stated that while “the word deduction may technically include depreciation, it is evident that the Legislature did not mean depreciation, but rather a complete nonrecognition of safe harbor leasing transactions in its employment of the term deduction.” Id. at 255. (Emphasis in original). He also questioned why subparagraph F(i) would remove the excess depreciation on property however held, while subparagraph F(ii) removed all deductions for safe harbor leased property. We cannot answer this question with any certainty (there is no legislative history available); we can only see from the language it used that the Legislature wished to limit the accelerated depreciation deduction whether the property was owned or leased, and also wished to avoid all recognition for income purposes for deductions for safe harbor leases, a special type of property. The language is unambiguous, clear and enforceable, and we have no reason to question this decision.
Since the issue is not how the Legislature wished to treat the income deduction, but rather how it wished to treat the property factor, we must focus on the language it used. There it spoke solely of the “depreciation.” In our view, it would strain the language of N.J.S.A. 54:10A-6(A) to read the word “depreciation” as encompassing the broader term “deduction.”
We find support for our analysis in other provisions of Chapter 50 of Laws of 1982. Specifically, Sec. 1 of that Act amended N.J.S.A. 54:10A-4(d), redefining “net worth.” The original Act stated the usual definition for net worth, but the 1982 amendment added the following:
Notwithstanding the foregoing, net worth shall not include any deduction for the amount of the excess depreciation described in paragraph (2)(F) of subsection (k) of this section. (Emphasis added)
Such “excess depreciation” deduction is described solely in subparagraph (F)(i).
*261 The legislation as a whole may be examined to glean the Legislature's purpose. Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987). The Legislature viewed the import of its “depreciation” amendment in N.J.S.A. 54:10A-4(k)(2)(F) as one involving “excess depreciation.” It therefore appears that the Legislature, in the context of an asset valuation (i.e. a determination of net worth), was not concerned with the safe harbor lease deduction in subparagraph (F)(ii). The value of property subject to safe harbor leases would continue to be included in the net worth computation. Thus, there is no reason to believe that the Legislature excluded the value of these safe harbor leases from the property component of the allocation factor.
The Director has urged that we exclude the safe harbor leases from the property component so that there would be consistency between the income and property fractions. See American Tel. & Telegraph Co. v. Director, Div. of Taxation, 4 N.J.Tax 638, 648 (Tax Ct.1982), aff'd, 194 N.J.Super. 168, 476 A.2d 800 (App.Div.1984), certif. denied, 97 N.J. 627, 483 A.2d 157, 158 (1984). In some cases, harmony well might be preserved, but as the taxpayer points out, there are many cases where the factors diverge. For example, under the definitions in N.J.S.A. 54:10A-4(d) and (k), net worth includes the value of stocks owned by the corporation, yet a portion of the dividends received are excluded from income, and under the allocation formulas, only real and tangible personal property are included in the property fraction. The same is true of other intangibles such as accounts, franchises, patent rights and the like. Therefore, the Legislature has not consistently imposed uniformity, as urged by the Director.
Reading the amending Act as a whole, we can discern no legislative intention to remove all deductions for safe harbor leased property from the property allocation formula. The Legislature clearly used the word “depreciation,” and referenced a section which used a like term in removing an income deduction only for the accelerated depreciation permitted under federal law. Such treatment was consistent in its amendment *262 of the “net worth” definition. We therefore hold that in determining the worth of the safe harbor leased property for the years in question, only the accelerated depreciation should have been disregarded; the balance of the value of the safe harbor leased property was properly included.
Given our reading of the statute, we need not treat the taxpayer’s argument that the regulations promulgated by the Division of Taxation based upon its mistaken interpretation of the Act required compliance with the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq. The Division’s rule-making power may only be exercised where authorized by statute. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561-562, 384 A.2d 795 (1978); In re Closing of Jamesburg High School, 83 N.J. 540, 548, 416 A.2d 896 (1980); In re N.J. Medical Malpractice, 246 N.J.Super. 109, 122, 586 A.2d 1317 (App.Div.1991). While there is no question that the regulations authorized the imposition of the additional tax, the regulations themselves must fall without a legislative foundation. Smith v. Director, Div. of Taxation, 108 N.J. 19, 26, 527 A.2d 843 (1987). In the Matter of Appeal of Adoption of N.J.A.C. 7:7A-1.4, 240 N.J.Super. 224, 230, 573 A.2d 162 (App.Div.1989), rev’d o.g., 118 N.J. 552, 573 A.2d 143 (1990). Uncoupling the federal and State treatments of safe harbor leases only for income fraction calculation purposes is directed by the amended Act. The Division has provided no statutory foundation for a similar treatment of the property fraction.
The summary judgment entered by the Tax Court is reversed. The matter is remanded to the Tax Court for the entry of summary judgment in favor of the plaintiff, and for recomputation of the property component of the allocation formula to reflect a nonrecognition only of accelerated depreciation.

As the trial judge explained, plaintiffs safe harbor lease property, the object of this dispute, is the subject of a sale lease-back arrangement, under which one of Donnelley’s customers would sell certain equipment to Donnelley and then lease the property back. 11 N.J.Tax 241, 243, 245 (Tax Ct.1990). The customer could then deduct the lease payments from current income and not be concerned with maintenance, insurance and the like; Donnelley could not only enhance revenues from the lease payments, but also achieve a substantial federal tax benefit from depreciation, as further explained infra.

By exclusion of the property from both the numerator and denominator of the fraction, if a taxpayer owned considerably more safe harbor leased property out of New Jersey than that leased within the State, the exclusion of such property would materially increase the size of the fraction, and thus increase the tax burden. The opposite would be true if the taxpayer’s safe harbor leased property within the State greatly exceeded that located elsewhere.